RANDALL, Circuit Judge:
 

 This case comes to us upon a final order of the district court concerning the scope of the automatic stay provided for in section 362 of the Bankruptcy Code. 11 U.S.C. § 362 (Supp. V 1981). The district court held that the stay extends far enough to prevent the American National Bank of Austin from asserting various state-law
 
 *1268
 
 causes of action in state court against Joe R. Long, who had controlled the Mortga-geAmerica Corporation before its descent into bankruptcy under chapter 7. 11 U.S.C. §§ 701-766. For the reasons given below, we affirm.
 

 This dispute began in April, 1981, when the bank obtained a jury verdict in state court against MortgageAmerica for $192,-554.40. The present case follows from the various efforts the bank has made to collect on that judgment from Long personally, rather than from his insolvent company. Although the parties vigorously disagree about whether Long was an officer or director of MortgageAmerica, neither Long nor his company has challenged the district court’s assertion that “[i]t is undisputed . . . that Long owned all of the issued and outstanding stock of RJF, Inc., which owned all the issued and outstanding stock of MortgageAmerica Corporation.” The essential fact that Long controlled Mortga-geAmerica thus seems beyond dispute.
 
 Cf.
 
 Securities Act of 1933, § 15, 15 U.S.C. § 77
 
 o
 
 (1976) (defining “controlling person” for federal securities law purposes).
 

 The bank’s principal collection effort consists of a suit filed against Long in state court in July, 1981. The gist of all three claims in the suit is that because Long deliberately stripped MortgageAmerica of assets in order to benefit himself .while defrauding the company’s creditors, he is personally liable to one of those creditors, i.e., the bank, for the company’s obligations. The suit is based on three allegedly wrongful transfers, all of which occurred in May and June, 1981: the bank claims, first, that Long caused MortgageAmerica to transfer without consideration $200,000 to RJF, which used the money to make a payment on one of its own loans that Long had personally guaranteed; second, that Long caused MortgageAmerica to transfer $100,-000 directly to him, personally, also without consideration; and third, that Long caused MortgageAmerica to transfer approximately $2,000,000 to another bank in order partially to repay another loan on which he was personally liable. Long vigorously denies all of these charges.
 

 Meanwhile, business for MortgageAmeri-ca apparently continued to worsen, and the company was forced into involuntary bankruptcy in August, 1981. (Various motions in connection with the bankruptcy court’s granting of final relief on November 22, 1982, are still pending in the bankruptcy and district courts.) As far as the present appeal is concerned, the only relevant issue before the bankruptcy court was whether the section 362 automatic stay applied to prevent the bank from pursuing its state-court action against Long. After a combined preliminary and final hearing under section 362, the bankruptcy court determined in January, 1982, that the three state-law causes of action against Long were “property of the [bankrupt’s] estate” and that the stay therefore applied. The district court agreed, and ruled that section 362 prohibited the bank from “usurping] causes of action” that rightfully belonged to the bankrupt’s estate. The bank appeals from that ruling.
 

 I
 

 The bank’s principal argument on this appeal is that under state law the three causes of action in issue all accrue solely to creditors in their individual capacities, not to the company, and that these particular causes of action thus cannot be considered “property of the estate” as that term is defined in the Bankruptcy Code. We therefore pause to examine the state-law causes of action and the protective and rehabilitative scheme established by the new Bankruptcy Code before going on in Part II to determine how the two laws — state and federal — fit together.
 

 A
 

 The three causes of action asserted in the state-court suit are based upon the “corporate trust fund” doctrine, the “denuding the corporation” theory, and the Texas Fraudulent Transfers Act, Tex.Bus. & Com.Code Ann. §§ 24.02-.03 (Vernon 1968).
 

 Although the “corporate trust fund” doctrine is the theory that has been the
 
 *1269
 
 most thoroughly studied by both courts and commentators, it is nonetheless often poorly understood. It was first established in 1824 by Chief Justice Story sitting alone as a Circuit Justice on the Circuit Court for the District of Maine,
 
 see Wood v. Dummer,
 
 30 F.Cas. 435 (Story, Circuit Justice 1824) (No. 17,944), and, since then, has become such a source of confusion that a leading commentator has introduced his forty-page treatment of the subject with the warning that “[pjerhaps no concept has created as much confusion in the field of corporate law as has the ‘trust fund doctrine.’” 15A W. Fletcher,
 
 Cyclopedia of the Law of Private Corporations
 
 § 7369 (rev. perm. ed. 1981). The doctrine does not, in fact, involve the application of any actual “trust” at all:
 

 When a court of equity does take into its possession the assets of an insolvent corporation, it will administer them on the theory that they in equity belong to the creditors and stockholders rather than to the corporation itself. In other words, and that is the idea which underlies all these expressions in reference to “trust” in connection with the property of a corporation, the corporation is an entity, distinct from its stockholders as from its creditors. Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free also from the touch of a stockholder who, though equitably interested in, has no legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, places the property in a condition of trust, first, for the creditors,
 
 and then for the stockholders.
 
 Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder.
 

 Hollins v. Brierfield Coal & Iron Co.,
 
 150 U.S. 371, 383, 14 S.Ct. 127, 129-30, 37 L.Ed. 1113 (1893) (emphasis added). Although any controlling person who breaches this “trust” is personally liable for the damage he does, the trust fund doctrine was established principally to permit a court of equity to marshal and distribute a corporation’s assets upon its insolvency and dissolution in much the same way as would a modern bankruptcy court.
 
 See Wood, supra,
 
 at 436-37. Born of necessity in 1824 when federal bankruptcy and state corporation laws were as yet ill-established,
 
 [1]
 
 the doctrine is rarely resorted to today.
 

 The Texas courts have upon a number of occasions discussed the nature and scope of the doctrine in Texas.
 
 [2]
 
 For our purposes, the Texas version of the theory has three significant aspects — the relationship of the doctrine to the dissolution provisions of the Texas Business Corporation Act, Tex.Bus. Corp.Act Ann. arts. 6.01-7.12 (Vernon 1980
 
 *1270
 
 & Supp.1982) (corresponding to Model Bus. Corp.Act §§ 82-105 (1980)), the identity of those who have standing to bring the action (whether creditors or shareholders), and the distribution of funds recovered under the theory (whether on a pro-rata or first-come-first-served basis).
 

 The Texas Supreme Court undertook an analysis of the first issue just two years ago in
 
 Hunter v. Fort Worth Capital Corp.,
 
 620 S.W.2d 547 (Tex.1981), when it was presented with the question whether a tort action arising eleven years after a defendant corporation’s statutory dissolution could proceed under the trust fund theory despite the three-year limitation in section 7.12 of the Business Corporation Act.
 
 See
 
 Tex. Bus.Corp.Act Ann. art. 7.12 (corresponding to MBCA § 105). The court’s language is worth reproducing in full:
 

 As early as 1879, the Texas legislature began enacting remedial statutes which embodied the trust fund theory... . These statutes were carried forward by subsequent legislatures, with only minor changes, until repealed in 1955 with the enactment of Article 7.12 [and most of the rest of the Model Business Corporation Act].... Under these remedial statutes, the legislature had given creditors of a dissolved corporation “the same broad measure of relief which equity would have afforded in the absence of legislation.” ... The effect of these statutes was to supplant the equitable trust fund theory by declaring a statutory equivalent. In Texas, recognition of the trust fund theory, as applied to dissolved corporations, did not exist apart from these statutes.
 

 620 S.W.2d at 550 (citations omitted). The court cited extensively, and ultimately adopted the solution recommended by, a law review article,
 
 see
 
 Norton,
 
 supra
 
 note 1, and concluded that actions brought after the limitation period in the state dissolution statute are time-barred.
 
 Hunter
 
 and the law review article — which extensively discussed Justice Story’s opinion in
 
 Wood v. Dummer
 
 — make it unmistakably clear that the trust fund theory and the Texas statutory dissolution procedures are intimately related.
 
 [3]
 
 We therefore think it significant (if not necessarily determinative) that under both section 97 of the Model Business Corporation Act and under sections 7.05(A) and 7.06(A)(3) of the Texas Act creditors
 
 and shareholders
 
 may bring actions to dissolve a failing corporation, and that any moneys recovered in that action are then distributed, according to section 98 of the Model Act and section 7.09 of the Texas Act, first to creditors and then to shareholders. The action is clearly in the right of the corporation, and creditors and shareholders participate in its proceeds in accordance with the usual priority rules.
 

 A more direct analysis of the trust fund doctrine reinforces this conclusion. In the days before
 
 Erie Railroad v. Tompkins,
 
 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal courts concluded that both shareholders and creditors had an interest in the “trust,” which necessarily meant that both had standing to bring the action.
 
 See Hollins, supra,
 
 150 U.S. at 383, 14 S.Ct. at 129-30. The Texas courts follow this rule. The supreme court has stated that Texas “follow[s] the general equitable rule that ... [the corporation’s] assets constitute a trust fund for the benefit of its stockholders and creditors .... ”
 
 Liquidating Trustees, supra
 
 note 2, 510 S.W.2d at 312-13. Although the action is usually brought by
 
 *1271
 
 creditors,
 
 see, e.g., Waggoner, supra
 
 note 2, 120 Tex. at 614-15, 40 S.W.2d at 5, there is nothing in the Texas cases to suggest that a shareholder could not also bring the suit. A Texas court has even held that if the action is to be brought at all, it must be brought on behalf of all those similarly situated, and that a single creditor, acting on its own behalf, does not have standing to bring the suit.
 
 See Sutton, supra
 
 note 2, 405 S.W.2d at 834-35.
 

 Any money collected in the action is distributed pro-rata to all creditors and shareholders. Those who control an insolvent corporation that can no longer be considered a true going concern are, in the words of the Texas Supreme Court, “charged with the duty of seeing that the creditors of the corporation [are] either paid in full or that they [are] paid pro-rata out of the funds received from the assets of the corporation.”
 
 Waggoner, supra
 
 note 2, 120 Tex. at 615, 40 S.W.2d at 5;
 
 accord, Nevitt, supra
 
 note 2, 595 S.W.2d at 143
 
 (“ratable distribution”
 
 required) (emphasis in original). In the one recent Texas Court of Civil Appeals case allowing a creditor to sue on its own claim under the trust fund theory, the court permitted a recovery only after the amount owed had been multiplied by the ratio of the corporate debtor’s assets to its total liabilities — a computation which resulted in a recovery of about twenty-five cents on the dollar.
 
 Wortham, supra
 
 note 2, 440 S.W.2d at 352. The court thus maintained the pro-rata character of the suit, despite the fact that the other creditors had not been joined in the action. At least insofar as the Texas corporate trust fund cases are concerned,
 
 see
 
 note 2,
 
 supra,
 
 the principle of first-come-first-served simply does not exist. In short, a suit under the theory is brought in the right of the corporation for the benefit of first the creditors, and second the shareholders, and all like-situated claimants are treated equally.
 

 What we have said about the corporate trust fund doctrine applies equally well to the denuding the corporation theory. The denuding theory is actually little more than a restatement of the corporate trust fund doctrine in slightly different terms. For a summary of the doctrine, the bank refers us to two cases,
 
 A.R. Clark Investment Co. v. Green,
 
 375 S.W.2d 425, 436-37 (Tex.1964), and
 
 World Broadcasting System, Inc. v. Bass,
 
 160 Tex. 261, 328 S.W.2d 863 (1959).
 
 [4]
 
 These cases refer us to a still earlier opinion, wherein Justice Brandéis summarized the doctrine in the following terms:
 

 The law which sends a corporation into the world with the capacity to act imposes upon its assets liability for its acts. The corporation cannot disable itself from responding by distributing its property among its stockholders, and leaving reme-diless those having valid claims. In such a case the claims, after being reduced to judgments, may be satisfied out of the assets in the hands of the stockholders.
 

 Pierce v. United States,
 
 255 U.S. 398, 402, 41 S.Ct. 365, 366, 65 L.Ed. 697 (1921) (footnote omitted). Justice Brandéis then followed this statement with a footnote citing Justice Story’s original opinion in
 
 Wood v. Dummer, supra,
 
 30 F.Cas. at 435, and five other corporate trust fund doctrine cases. 255 U.S. at 402 n. 1, 41 S.Ct. at 366 n. 1. Subsequent Texas-eourt interpretations of
 
 A.R. Clark
 
 and
 
 World Broadcasting System, see
 
 note 4
 
 supra,
 
 and accompanying text, confirm the basic similarity of the trust fund and denuding theories. In
 
 Burton Mill & Cabinet Works, Inc. v. Truemper,
 
 422 S.W.2d 825 (Tex.Civ.App. — Waco 1967, writ ref’d n. r. e.), for instance, the plaintiff’s pleadings had explicitly set out a trust fund cause of action; the court agreed that the pleadings could support a jury verdict, but it did so on the ground that “[b]y denuding the corporation of its assets [the “trustees”] divested it of any source from which [the] plaintiff and other corporate creditors could collect their claims.” 422
 
 *1272
 
 S.W.2d at 827.
 
 See also Fagan, supra
 
 note 2, 494 S.W.2d at 632 (noting no differences between the two theories). The trust fund and denuding doctrines state essentially the same theory. Each involves the imposition of personal liability upon the “trustees,” that is, upon those who use their power of control for their personal benefit rather than for that of the corporation.
 
 [5]
 

 The bank’s cause of action under the relevant sections of the Texas Fraudulent Transfers Act, Tex.Bus. & Com.Code Ann. §§ 24.02-.03 (Vernon 1968), requires a slightly different analysis. An action under the Texas Act, for our purposes, does appear to be assertable only by a debtor’s creditors,
 
 see, e.g., Harcrow
 
 v.
 
 Reed,
 
 425 S.W.2d 59 (Tex.Civ.App. — Waco 1968, writ ref’d n. r. e.), but the remedy afforded a successful claimant relates entirely to the debtor’s fraudulently transferred property and entails no personal liability on the part of those responsible for the transfer,
 
 see, e.g., Cantwell v. Wilson,
 
 241 S.W.2d 366 (Tex.Civ.App. — Austin 1951, no writ) (construing predecessor statute). A suit under the Texas Act, in other words, pursues the debtor’s property and, as such, is usually brought by the trustee in bankruptcy for the benefit of all creditors equally.
 
 See United Towing Co.
 
 v.
 
 Phillips,
 
 242 F.2d 627, 631-32 (5th Cir.1957) (construing statutes now found at Tex.Bus. & Com.Code Ann. § 24.02 and at 11 U.S.C. § 548); 11 U.S.C. § 544 (trustee steps into creditors’ shoes for purposes of asserting state-law causes of action on their behalf).
 

 Under the Texas Act, a transfer in fraud of creditors is voidable in the general sense that good title may be passed to a transferee who does not have notice of the fraud, Tex.Bus. & Com.Code Ann. § 24.-02(b), and void in the very limited sense that creditors may otherwise treat the transferred property as though the transfer
 
 *1273
 
 had never taken place,
 
 see Texas Sand Co. v. Shield,
 
 381 S.W.2d 48, 55 (Tex.1964). Under Texas law, as under section 9 of the Uniform Fraudulent Conveyance Act, a creditor’s action under the state law amounts to a suit for the debtor’s wrongfully transferred or secreted property, which, when found, may be seized and executed upon as though the debtor had never attempted to transfer it.
 
 See Texas Sand, supra,
 
 381 S.W.2d at 55; Unif. Fraudulent Conveyance Act § 9 (1918) (a creditor may petition to have the conveyance set aside or may “[disregard [it] and attach or levy execution upon the property conveyed”). The basic principle of a fraudulent transfers act, according to one court, is that “[a]s to the creditors, the property continues in the debtor, and it or its proceeds are liable to the creditors’ demands.”
 
 Hallack v. Hawkins,
 
 409 F.2d 627, 630 (6th Cir.1969) (construing the Unif. Fraudulent Conveyance Act).
 

 B
 

 The relationship between the new Bankruptcy Code and the various state-law causes of action assertable by creditors in state court is, as we have already intimated, both complex and determinative of the outcome of the present litigation.
 

 The basic idea behind a corporate chapter 7 bankruptcy case is the marshalling of assets and their pro-rata distribution to creditors. Section 726 of the Code sets out an elaborately cross-referenced six-step order of distribution. 11 U.S.C. § 726. “This section,” according to the House and Senate committees recommending the bill, “dictates the order [of] distribution” of all “property of the estate.” S.Rep. No. 989, 95th Cong., 2d Sess. 96,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5882; H.R.Rep. No. 595, 95th Cong., 1st Sess. 383 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6339. The additions made by the Bankruptcy Reform Act to the Judicial Code then further provide that “[t]he bankruptcy court in which a case under [the Bankruptcy Code] is commenced shall have exclusive jurisdiction of all of the property, wherever located, of the debtor, as of the commencement of such case.” 28 U.S.C. § 1471(e) (Supp. V 1981) (emphasis added).
 
 [6]
 
 The mainstays of an action under chapter 7 are thus exclusive jurisdiction and pro-rata distribution in accordance with section 726.
 

 A case under chapter 7 can be either voluntary or involuntary. The present case is involuntary, and began when one of MortgageAmerica’s creditors (not the bank) filed a petition for involuntary bankruptcy under section 303 of the Code. 11 U.S.C. § 303. Section 362(a) provides that the filing of such a petition “operates as a[n] [automatic] stay, applicable to all entities, of . .. any act to obtain possession of property of the estate or of property from the estate.” 11 U.S.C. § 362(a)(3). The key term here is “property of the estate,” defined in section 541 of the Code. For our purposes the relevant provision is section 541(a)(1), which provides: “The commencement of a case under section ... 303 of [the Code] creates an estate ... comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1) (subpar-agraphing deleted). The scope of the automatic stay under section 362 thus depends both upon the policies expressed in the Bankruptcy Code, considered as a whole, and upon the particular meaning of the phrase “all legal or equitable interests of the debtor in property.”
 
 [7]
 

 
 *1274
 
 The commonsense general principles supporting the section 362 stay are easily stated. According to the House Report accompanying the bill that eventually became the current Code, the stay protects both debtors
 
 and creditors:
 

 The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
 

 The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor’s property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor’s assets prevents that.
 

 H.R.Rep. No. 595,
 
 supra,
 
 at 340, 1978 U.S. Code Cong. & Ad.News at 6296-97. Indeed, one of “the prime bankruptcy po-licpes]” that pervades virtually every provision of the Code is that of “equality of distribution among creditors,” and, conversely, one of the principal bankruptcy
 
 bétes noires
 
 is the “ ‘race of diligence’ of creditors to dismember the debtor” before its assets are exhausted.
 
 Id.
 
 at 178, 1978 U.S.Code Cong. & Ad.News at 6138. The automatic stay thus prevents a multijuris-dictional rush to judgment whose organizing principle could only be first-eome-first-served, and protects the interests of all creditors by treating like-situated claimants equally.
 
 [8]
 

 The specific meaning of the reference in section 541(a)(1) to “all legal or equitable interests of the debtor in property” is also easily discerned. Even on its face, section 541(a)(1) is all-encompassing, and Congress meant for it to be construed commensurately.
 
 See Report of the Commission on the Bankruptcy Laws of the United States,
 
 H.R.Doc. No. 137, 93d Cong., 1st Sess., pt. 1, at 192-95 (1973),
 
 incorporated by reference in
 
 H.R.Rep. No. 595,
 
 supra,
 
 at 175-76 & n. 10, 1978 U.S.Code Cong. & Ad.News at 6136. At the very least, it carries forward the explicit reference in section 70(a) of the old Bankruptcy Act to “rights of action.”
 
 See
 
 S.Rep. No. 989,
 
 supra,
 
 at 82, 1978 Code Cong. & Ad.News at 5868; H.R.Rep. No. 595,
 
 supra,
 
 at 175, 367, 1978 U.S.Code Cong. & Ad.News at 6136, 6323;
 
 see also United States v. Whiting Pools, Inc.,
 
 - U.S. -, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983). Such a right may, of course, be based on either federal or state law, but our interest here is in the three Texas causes of action discussed in the preceding Section.
 

 II
 

 As already noted above, the bank’s three Texas claims state essentially only two
 
 *1275
 
 causes of action, one under the corporate trust fund (or denuding the corporation) theory, and one under the Texas Fraudulent Transfers Act. Because the analysis under the second of these is the more straightforward, we shall take it up first.
 

 A
 

 An action under the Fraudulent Transfers Act is essentially one for property that properly belongs to the debtor and which the debtor has fraudulently transferred in an effort to put it out of the reach of creditors.
 
 See
 
 Section I.A,
 
 supra.
 
 The transferee may have colorable title to the property, but the equitable interest — at least as far as the creditors (but not the debtor) are concerned — is considered to remain in the debtor so that creditors may attach or execute judgment upon it as though the debtor had never transferred it. We think that when such a debtor is forced into bankruptcy, it makes the most sense to consider the debtor as continuing to have a “legal or equitable interest[]” in the property fraudulently transferred within the meaning of section 541(a)(1) of the Bankruptcy Code.
 
 See
 
 4A
 
 Collier on Bankruptcy,
 
 ¶ 70.14[1], at 130-31 (14th ed. 1978) (noting the somewhat anomalous, but nonetheless correct nature of this interpretation). The automatic stay under section 362(a) thus applies and prevents a creditor from continuing to pursue a cause of action under the Texas Fraudulent Transfers Act after a petition for bankruptcy has been filed.
 

 The legislative history of section 541(a)(1) reinforces this conclusion. The House report accompanying the bill stated that section 541(a)(1) was intended to “include[ ] all kinds of property, including tangible or intangible property, causes of action ..., and all other forms of property currently specified in section 70a of the Bankruptcy Act .... ” H.R.Rep. No. 595,
 
 supra,
 
 at 367, 1978 U.S.Code Cong. & Ad.News at 6323. Section 70(a), in turn, included a reference to “property transferred by [the debtor] in fraud of his creditors,” Bankruptcy Act of 1898, ch. 541, § 70(a)(4), 30 Stat. 544, 566 (repealed 1979) (reenacting without material change Bankruptcy Act of 1867, ch. 176, § 14, 14 Stat. 517, 523), which was apparently meant to include a reference to state, as well as federal law.
 
 See
 
 4A
 
 Collier on Bankruptcy
 
 ¶70.14[1] (14th ed. 1978). In any event, the Supreme Court held in 1878 that an action based on such a fraudulent transfer “vested in the [trustee],” and therefore could not be brought by a creditor acting alone and without the court’s express permission.
 
 Glenny v. Langdon,
 
 98 U.S. 20, 22, 27-31, 25 L.Ed. 43 (1878). We do not think that the 1978 Congress meant to change this result when it eliminated the old section 70(a)(4) in favor of the new sections 541(a)(1) (property of the estate), 544 (incorporation of state fraudulent conveyance law), and 548 (federal fraudulent conveyance law).
 

 This result also does the most to further the fundamental bankruptcy policy of equitable distribution among creditors.
 
 See
 
 11 U.S.C. § 726. The “strong arm” provision of the current Code, 11 U.S.C. § 544, allows the bankruptcy trustee to step into the shoes of a creditor for the purpose of asserting causes of action under state fraudulent conveyance acts for the benefit of all creditors, not just those who win a race to judgment.
 
 See
 
 4B
 
 Collier on Bankruptcy
 
 ¶ 70.71, at 788-89 (14th ed. 1978). A trustee acting under section 544 “acts as a representative of creditors,”
 
 Hassett v. McColley (In re O.P.M. Leasing Services, Inc.),
 
 28 B.R. 740, 760 (Bkrtcy.S.D.N.Y.1983), and any property recovered is returned to “the estate for the eventual benefit of
 
 all
 
 creditors.”
 
 Johnson v. First National Bank (In re Johnson),
 
 28 B.R. 292, 297 (Bkrtcy.N.D.Ill.1983) (emphasis added);
 
 accord, Segarra v. Banco Central y Econo-mías (In re Segarra),
 
 14 B.R. 870, 878 (Bkrtcy.D.P.R.1981) (“These ‘strong arm’ provisions help a trustee to avoid certain obligations of a debtor for the benefit of all creditors.”). The Supreme Court has, in fact, expressly noted that section “541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code,”
 
 *1276
 
 which would include property made available through section 544.
 
 Whiting Pools, supra,
 
 103 S.Ct. at 2313. Actions for the recovery of the debtor’s property by individual creditors under state fraudulent conveyance laws would interfere with this estate and with the equitable distribution scheme dependent upon it, and are therefore appropriately stayed under section 362(a)(3). Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served. Even without the Bankruptcy Code and the policies that support it, we would be reluctant to elevate such a principle to a rule of law.
 

 B
 

 The trust fund (denuding) doctrine requires a different analysis. Section 362(a) of the Code provides that the automatic stay prohibits “any act to obtain possession of property of the estate,” and the legislative history to section 541(a) makes clear that that section’s reference to “all legal or equitable interests of the debtor in property” implicitly incorporates by reference all “rights of action” described in section 70(a) of the old Bankruptcy Act.
 
 See
 
 Section I.B,
 
 supra.
 
 The term “rights of action” in turn necessarily depends upon the state (or federal) law creating those rights. For our purposes, this means that the scope of the automatic stay under section 362 depends upon how the Texas courts would characterize a cause of action under the trust fund (denuding) theory. If an action under that theory belongs, under Texas law, to the corporation, then the action is “property of the estate” and the bank may not pursue it.
 

 We think that the analysis already undertaken in Section I.A of this opinion demonstrates that under Texas law a cause of action under the trust fund (denuding) theory is in the right of the corporation, though, to be sure, that right is
 
 assertable
 
 (and usually is asserted) by the corporation’s creditors.
 
 [9]
 
 This somewhat anomalous situation — where a cause of action asserta-ble by creditors actually belongs to the corporation — is best understood through an analogy to the typical shareholders’ action against a corporation’s officers and directors. Like most jurisdictions, Texas has established such a right of action, which can be brought either directly by the corporation or, if the corporation refuses to act, by a shareholder in a derivative action.
 
 See
 
 Tex.Bus.Corp.Act Ann. art. 5.14 (Vernon 1980); 15 Tex.Jur.3d
 
 Corporations
 
 §§ 165-79 (1981). Despite the fact that the action under normal circumstances is frequently not brought by the corporation itself, the courts have uniformly held that, upon bankruptcy, it passes to the trustee, who is then charged with prosecuting it for the benefit of
 
 all
 
 creditors and shareholders.
 
 See
 
 4
 
 Collier on Bankruptcy
 
 ¶ 541.10[8] (15th ed. 1983) (citing representative cases). These principles were recently summarized by a New York bankruptcy court:
 

 In New York [as in Texas], a transfer of corporate funds is fraudulent if made
 
 *1277
 
 when the corporation is insolvent or would thereby be rendered insolvent if the conveyance is made or the obligation is incurred without fair consideration .... Also, corporate directors, officers, and stockholders are accountable to creditors for the misappropriation of corporate funds, even in the context of loans.... Thus, directors and officers may not pursue personal endeavors inconsistent with their duty of undivided loyalty to their corporations.... These officers and directors are fiduciaries to the corporations’ stockholders and creditors, ... and the right to recover for a breach of these duties passes to the trustee in bankruptcy.
 

 In re O.P.M. Leasing, supra,
 
 28 B.R. at 759 (citations omitted). This Circuit has already expressly adopted the same theory, and we would be, in any event, disinclined to adopt any other.
 
 Holahan v. Henderson,
 
 394 F.2d 177 (5th Cir.1968),
 
 aff'g per curiam
 
 277 F.Supp. 890, 899 (W.D.La.1967) (“Normally, the right to set aside a [fraudulent] transfer such as this would be enforceable through a stockholder’s derivative action, but in the event of bankruptcy of the corporation, such claims are enforceable by the trustee.”),
 
 cert. denied,
 
 393 U.S. 848, 89 S.Ct. 136, 21 L.Ed.2d 119 (1968).
 

 We think that precisely the same analysis should obtain here. Although a trust fund (denuding) action — as the bank has repeatedly reminded us — is usually brought by creditors and is assertable by them, it does not “belong” to them in any absolute sense. The bank’s repeated assertions that the contrary is true is simply wrong.
 
 [10]
 
 Under Texas law the action is in the right of the corporation and, as such, is “property of the estate” within the meaning of section 541(a)(1) of the Code. The automatic stay therefore applies.
 

 Ill
 

 We hold that the bank’s state-law actions against Long under the Texas trust fund (denuding) theory and under the Texas Fraudulent Transfers Act were, as the bankruptcy and district courts held, automatically stayed by section 362(a)(3) of the Bankruptcy Code immediately upon the filing of the petition for involuntary bankruptcy under section 303 of the Code.
 

 We reach this conclusion on the basis of both the text of the Bankruptcy Code and what we perceive to be common sense. The literal language of sections 362(a)(3) and 541(a)(1) permits us to reach no other result. Property fraudulently conveyed and recoverable under the Texas Fraudulent Transfers Act remains, despite the purported transfer, property of the estate within the meaning of section 70(a)(4) of the old Bankruptcy Act, and hence of section 541(a)(1) of the new Code. Similarly, a cause of action under the Texas corporate trust fund (denuding) theory, even though usually brought by creditors, is an action in the right of the corporation, and which is brought for the benefit of all creditors and shareholders with an interest in the corporation. As such, the action is a “right of action” belonging to the corporation within the meaning of section 70(a)(5) of the old Bankruptcy Act, and thus also within the meaning of section 541(a)(1) of the Code.
 
 *1278
 
 The automatic stay in section 362(a)(3) therefore applies. More fundamentally, this result furthers the basic, commonsense principle of pro-rata distribution that runs through virtually every substantive provision of the Code. At least in modern bankruptcy law, the day of unfair and unseemly races to the courthouse is long gone. Whatever else may be uncertain or unsettled in the construction of the new Bankruptcy Code, we think it beyond cavil that the principle of first-come-first-served has no place in bankruptcy law except to the very limited extent that specific provisions give it a place.
 

 The judgment of the district court affirming in all respects the judgment of the bankruptcy court is therefore AFFIRMED.
 

 [1]
 

 . Some have argued, however, that the doctrine was never necessary, and that it has done more to confuse than to advance the cause of justice.
 
 See, e.g., Hospes v. Northwestern Mfg. & Car Co.,
 
 48 Minn. 174, 50 N.W. 1117 (1892); Norton,
 
 Relationship of Shareholders to Corporate Creditors upon Dissolution: Nature and Implications of the “Trust Fund” Doctrine of Corporate Assets,
 
 30 Bus.Law 1061 (1975); Warren,
 
 Safeguarding the Creditors of Corporations,
 
 36 Harv.L.Rev. 509, 544-A7 (1923).
 

 [2]
 

 .
 
 Hunter v. Fort Worth Capital Corp.,
 
 620 S.W.2d 547, 551 (Tex.1981) (after corporate dissolution trust fund theory no longer “exists apart from the [Texas codification of § 105 of the Model Business Corporation Act]”);
 
 State v. Liquidating Trustees,
 
 510 S.W.2d 311, 312-13 (Tex.1974) (dictum);
 
 Waggoner v. Herring-Showers Lumber Co.,
 
 120 Tex. 605, 40 S.W.2d 1 (1931) (leading modern Texas Supreme Court analysis);
 
 State v. Nevitt,
 
 595 S.W.2d 140, 143 (Tex.Civ.App. — Dallas 1980, no writ) (explicating theory but refusing to apply it to facts of case);
 
 Fagan v. La Gloria Oil & Gas Co.,
 
 494 S.W.2d 624 (Tex.Civ.App. — Houston [14th Dist.] 1973, no writ);
 
 Wortham v. Lachman-Rose Co.,
 
 440 S.W.2d 351 (Tex.Civ.App.— Houston [1st Dist.] 1969, no writ);
 
 Sutton v. Reagan,
 
 405 S.W.2d 828, 834-35 (Tex.Civ.App. —San Antonio 1966, writ refd n. r. e.). Citations to tum-of-the-century and earlier cases may be found in
 
 Waggoner, supra,
 
 120 Tex. at 614-15, 40 S.W.2d at 5, and in 15 Tex.Jur.3d
 
 Corporations
 
 §§ 388-89 (1981).
 

 [3]
 

 . After tracing the trust fund theory back to
 
 Wood v. Dummer, supra,
 
 and after examining both the “constructive trust” and “equitable lien” theories of the trust fund doctrine, the article notes that legislative preemption, at least in the dissolution area, may be well nigh complete:
 

 In fact there may be some substance to the argument that the statutory provisions (including, but not limited to limitations provi-sionts] ) in modern state corporation codes form the sole basis for a creditor’s claim against a shareholder and tha[t] any application of the “trust fund” doctrine must be generally construed within the broad framework of the relevant corporation code provisions on dissolution.
 

 Norton,
 
 supra
 
 note 1, 30 Bus.Law at 1077. We do not, of course, presume to say whether the Texas courts will carry the logic of
 
 Hunter
 
 this far.
 

 [4]
 

 . Our research has unearthed three other cases.
 
 See Inesco, Inc. v. Sears,
 
 567 S.W.2d 827, 830 (Tex.Civ.App. — Beaumont 1978, writ ref'd n. r. e.);
 
 Fagan, supra
 
 note 2 (alternative holding);
 
 Burton Mill & Cabinet Works, Inc. v. Truemper,
 
 422 S.W.2d 825 (Tex.Civ.App.— Waco 1967, writ ref'd n. r. e.).
 

 [5]
 

 . We have also been unable to find anything in the Texas “denuding” cases inconsistent with the pro-rata character of the corporate trust fund action. In
 
 World Broadcasting, supra,
 
 the pro-rata issue was not raised since the dissolved corporation had apparently been solvent; the dissolved corporation in
 
 A.R. Clark, supra,
 
 had also apparently been solvent; in
 
 Inesco, supra
 
 note 4, there was only one corporate asset, a barge, and also apparently only one creditor (the vendor of the barge); in
 
 Fagan, supra
 
 note 2, the court refused to address the pro-rata issue because it had not been properly preserved for appeal, 494 S.W.2d at 631; and in
 
 Burton Mill, supra,
 
 the debtor corporation had been solvent before the transfer of the allegedly misappropriated property, so that it was not necessary to discuss the pro-rata issue.
 

 The nature of the controlling person’s liability under the trust fund (denuding) theory is explored in some depth in the Norton article: The fiduciary relationship, if any, which exists between a shareholder and a corporate creditor is merely a very loose one which arises from the fact of unjust enrichment.
 

 Considering the “trust fund” equivalent to an equitable lien the Alabama Supreme Court has held that a stockholder’s personal liability to a corporate creditor because of receipt of a dissolved corporation’s assets arises only when the stockholder has impaired the creditor’s equitable lien.
 
 [Kelly v. Andalusia Brick Co.,
 
 222 Ala. 203, 131 So. 559 (1930).] As to the nature of the liability, the Eighth Circuit in the case of
 
 McWilliams
 
 v.
 
 Excelsior Coal Co.,
 
 held that where upon corporate dissolution stockholders used assets distributed to them for personal profit (resulting in deterioration of the assets) said stockholders may be held liable in equity for the full value of the assets received. [298 F. 884, 886 (8th Cir.1924).] As indicated in
 
 [Koch v. United States
 
 ]:
 

 Where the assets coming into the hands of a stockholder suffer a change in value, the creditor must take the trust fund as he finds it, securing the advantage of any increase and suffering any decrease, unless the stockholder is responsible for the decrease.
 

 [138 F.2d 850, 853 (10th Cir.1943).]
 

 A reasonable approach to the matter is expressed in
 
 [Corporation Audit Co. v.
 
 Cafritz]: that is, the relationship of shareholder to creditor upon corporate dissolution is not that of trustee-beneficiary, but is simply that of “transferee” of the corporate assets, and nothing more. [156 F.2d 839, 842 (D.D.C.1946).]
 
 “There is no personal liability, except in cases where he [shareholder] has disposed of the trust fund in such a manner that it cannot be followed, or where he has caused a diminution in the value of the tru[st] assets.” [Koch, supra,
 
 138 F.2d at 852.]
 

 Norton,
 
 supra
 
 note 1, 30 Bus.Law at 1074 (footnotes omitted) (emphasis in original). We think that the foregoing analysis provides considerable insight into how and why the trust fund theory has been restated in terms of “denuding.” The Texas courts appear to use the “denuding” approach when the debtor corporation, before the allegedly improper transfer of corporate assets, had not actually been insolvent.
 

 [6]
 

 .
 
 See also
 
 124 Cong.Rec. S17,424 (daily ed. Oct. 6, 1978),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 6553 (prepared remarks of Sen. De-Concini in the nature of a House-Senate Conference Report) (“the bankruptcy court is given exclusive jurisdiction of the property of the estate in a case under [the Code]”); 1
 
 Collier on Bankruptcy
 
 ¶ 3.01[g] (15th ed. 1983) (citing cases). Although section 1471 technically does not become effective until 1984, the interim-period provisions of the Code direct that, for our purposes, it be fully applied throughout the transition period. Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, § 405, 92 Stat. 2549, 2685, 28 U.S.C. note prec. § 1471 (Supp. V 1981); 1
 
 Collier on Bankruptcy
 
 ¶ 3.01 [l][a] (15th ed. 1983).
 

 [7]
 

 . The other possibly relevant provision in section 541 is section 541(a)(3), which provides that property of the estate includes “[a]ny interest in property that the trustee recovers un
 
 *1274
 
 der section 543, 550, 553, or 723 of [the Code].” Section 550 then provides that “to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of [the Code], the trustee may recover, for the benefit of the estate, the property transferred,” and section 544 provides, in essence, that the trustee may step into the shoes of certain creditors for the purpose of asserting various state-law actions, including suits under state fraudulent conveyance acts. See 4B
 
 Collier on Bankruptcy
 
 ¶ 70.71, at 788-89 (14th ed. 1978). In view of our disposition of this case, it is unnecessary for us to decide whether the phrase “[a]ny interest in property that the trustee recovers” may be read
 
 “might
 
 recover” at some time in the future. It is, therefore, unnecessary for us to rely upon the definition of “property of the estate” provided in section 541(a)(3).
 

 [8]
 

 . The unquestioned evils of a system of first-come-first-served have also been analyzed from a variety of non-bankruptcy perspectives by both courts and commentators.
 
 See, e.g., State Farm Fire & Casualty Co. v. Tashire,
 
 386 U.S. 523, 533, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967) (Interpleader Act);
 
 Maryland Casualty Co. v. Cushing,
 
 347 U.S. 409, 417, 74 S.Ct. 608, 612, 98 L.Ed. 806 (1954) (plurality opinion) (Limitation Act); Keeton,
 
 Preferential Settlement of Liability-Insurance Claims,
 
 70 Harv.L. Rev. 27 (1956) (state insurance law).
 

 [9]
 

 . This point has been considerably confused by an often-quoted and somewhat misleading passage from the current and superseded editions of the leading bankruptcy treatise:
 

 The trustee, however, stands in the shoes of the debtor corporation in prosecuting a cause of action belonging to the debtor, and where the applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate under section 541(a) that are enforceable by the trustee. [It is doubted, however, that the decisions insisting on the disability of the trustee to sue on rights of action belonging to creditors are as inevitable as the courts have sometimes thought ....]
 

 4
 
 Collier on Bankruptcy
 
 ¶541.10[8] (15th ed. 1983) (bracketed sentence deleted from current edition but included in 4A
 
 Collier on Bankruptcy
 
 ¶ 70.29[3] (14th ed. 1978)) (footnotes omitted). The use of the term “belonging to” is particularly misleading since
 
 Collier
 
 appears to use it as a synonym for “assertable by.” The fact that creditors can “assert,” “bring,” or “prosecute” a cause of action under the Texas trust fund (denuding) theory does
 
 not
 
 mean that the action “belongs” to them. We think that the action can most properly be thought of as “belonging” to the corporation though it is, of course, virtually always “asserted” by creditors. See Section I.A,
 
 supra.
 

 [10]
 

 . In support of its position, the bank cites several of the Texas cases already discussed,
 
 supra,
 
 and two federal cases. Both federal cases are distinguishable. In
 
 Teledyne Indus., Inc. v. Eon Corp.,
 
 401 F.Supp. 729 (S.D.N.Y.1975), aff
 
 'd per curiam,
 
 546 F.2d 495 (2d Cir.1976), the court determined that the old bankruptcy courts did not have exclusive jurisdiction over a case brought by a creditor against a corporation’s four controlling persons. The suit was based upon two specific fraudulent misrepresentations that had been made to the one plaintiff, and upon the breach of a fiduciary duty allegedly owed to that plaintiff with respect to an escrow-like bank account that had been set up specially to accommodate the contractual transaction in issue. 401 F.Supp. at 733. The cause of action, in short, belonged specifically and exclusively to the suing creditor, and neither to any other creditors nor to the insolvent corporate debtor. Similarly, in
 
 Murdock
 
 v. Aliina
 
 (In re Curtina
 
 Int’l) 15 B.R. 993 (Bkrtcy.S.D.N.Y.1981), the bankruptcy court held that it did not have jurisdiction under 28 U.S.C. § 1471 to adjudicate a claim brought by the plaintiff-creditor directly against two corporate officers and shareholders on an alter ego (“piercing the corporate veil”) theory. That fact situation, too, is far removed from the present one.