**Albert F. THOMASSON, Burgess A. Thomasson, McMillan Refining, Inc., McMillan-Johns Exploration, Inc., Sea Island Processing, Ltd., and Sea Island Explorations, Ltd., Plaintiffs,**

v.

**MANUFACTURERS HANOVER TRUST COMPANY, Mbank Dallas, A National Association, for Itself and as Agent, Continental Illinois National Bank and Trust Company of Chicago, Bank of Montreal and First City National Bank of Houston, Defendants.**

Civ. A. No. H–86–2288.

United States District Court, S.D. Texas, Houston Division.

April 7, 1987.

J. Michael Rediker, Ritchie & Rediker, Birmingham, Ala., for nonparty Gary J. Knostman, trustee, Bankruptcy Estate of Tomlinson Interests, Inc.

Donald M. Wright, Sirote, Permutt, Friend, Friedman, Held & Apolinsky, PC, Birmingham, Ala., Kelly J. Coghlan, Dotson, Babcock & Scofield, Houston, Tex., for plaintiffs.

Donald W. Steward, Birmingham, Ala., Morton L. Susman, Weil, Gotshal & Manges, J. Eugene Clements, Porter & Clements, Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

HITTNER, District Judge.

Pending before this Court is Defendants' Motion to Dismiss.[1] Having considered

---

1. Also pending is Plaintiffs' Motion to Strike Appendices to Defendants' July 1, 1986, Dismissal Motion. Plaintiffs assert that it is inappropriate for the Court to consider those exhibits in evaluating a Motion to Dismiss and that the exhibits have not been submitted in a form which would make them competent summary judgment evidence, should the Court view De-

fendants' motion as one for summary judgment. Because the Court has evaluated Defendants' Motion to Dismiss without recourse to Defendants' exhibits, Plaintiffs' motion is rendered moot. Nothing in this opinion, however, precludes Defendants from incorporating the exhibits through appropriate affidavits should De-

this motion, the extensive briefing by the parties, the argument of counsel, and the applicable law, the Court is of the opinion that Defendants' motion must be granted in part and denied in part.

Plaintiffs, minority interest owners in a limited partnership, have asserted nine separate causes of action against Defendants:

1. Civil violation of RICO;
2. Conspiracy to violate RICO;
3. Rule 10b–5 security fraud;
4. Tortious interference with contract or business relations;
5. Fraud, misrepresentation and suppression of material facts;
6. Breach of fiduciary duty, and aiding and abetting such breach;
7. Conversion;
8. Damages for destruction of property; and
9. Breach of warranty.

Defendants urge dismissal of these causes of action on a variety of theories. The majority of those theories have as their basis the contention that Plaintiffs have failed to state a claim upon which relief may be granted. As to all theories grounded on that premise, the Court finds that dismissal is inappropriate because Defendants have failed to meet the required standard for dismissal, i.e. they have failed to show beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle Plaintiffs to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Additionally, Defendants urge theories grounded on lack of standing. Defendants contend that dismissal of all the claims of the Plaintiffs who are partners in the partnership known as Republic Refining Limited (the Partner/Plaintiffs), except Plaintiffs' security and warranty claims, is required because Plaintiffs are asserting partnership interests, not individual claims. For the reasons set forth below, the Court

is of the opinion that the Partner/Plaintiffs' claims grounded on allegations of conversion of their contribution to the partnership and damages for destruction of partnership property should be dismissed, and that the Partner/Plaintiffs' RICO and common law fraud allegations should be dismissed only to the extent that they relate to damage to the Partner/Plaintiffs' contribution to the partnership.

### FACTUAL BACKGROUND

During the 1970's, Plaintiffs acquired a 44 percent working interest in a Mississippi gas field known as the "Johns Field." Tomlinson Interests, Inc. (TII) acquired the remaining 56 percent interest and was designated as operator of the field.

After completion of the first productive well, it was discovered that the Johns Field contained "sour gas," which required further processing before it could be marketed. A limited partnership, known as Republic Refining Limited (RRL), was formed for the purpose of constructing, owning, and operating a gas processing plant to process the "sour gas." Plaintiffs, with the exception of McMillan-Johns Exploration, Inc., were investors in the plant and thus in the partnership.[2] All Partner/Plaintiffs are general partners, with the exception of Sea Island which is a limited partner. Republic Refining Co. (RRC) was incorporated as a subsidiary of TII for the purpose of owning 60 percent interest in the processing plant and was designated as managing partner. Revenues of RRL were to be generated through payment of processing fees pursuant to gas processing agreements executed by and between the Johns Field partners and RRL.

Defendants (the Bank Group) financed the construction of the gas processing plant. The loan was negotiated by RRC as the managing partner of RRL. Plaintiffs allege that, although they were general partners, pursuant to the RRL Partnership Agreement, they were to be liable only for

---

fendants choose to file a motion for summary judgment in the future.

**2.** Because McMillan-Johns Exploration, Inc., asserts interests unassociated with RRL, its ability

to maintain its claims in an individual capacity cannot be questioned. The following discussion therefore refers only to the claims of the Partner/Plaintiffs.

a total of $50,000,000, which they contributed in the form of Letters of Credit. TII was to guarantee RRC's 60 percent of the construction loan.

Plaintiffs allege that the Bank Group committed the following wrongful acts:

1. The Banks, with knowledge that the RRL Partnership Agreement was being violated, obtained a security interest in the Plaintiffs' gas processing agreements as part of the construction loan.

2. The Banks conspired to conceal this fact from Plaintiffs.

3. The Banks assumed control of the revenues of TII, RRC, and RRL and used that control to cause a default in the construction loan.

4. The Banks failed to apprise Plaintiffs of RRL's default.

5. The Banks wrongfully drew on Plaintiffs' letters of credit submitted as collateral for the construction loan.

6. The Banks caused the transfer of TII's affiliated entities' assets.

7. The Banks instituted an action in Mississippi state court to foreclose on the construction loan.

The central theme running through Plaintiffs' allegations is that the Banks committed the above wrongs through a conspiracy with RRL's managing partner.

### CATES v. INTERNATIONAL TELEPHONE & TELEGRAPH CORP.

To support their contention that the Plaintiffs lack standing to assert the above-alleged wrongs, the Banks rely on the leading Fifth Circuit case on the issue of the ability of an individual partner to assert partnership-related interests, *Cates v. International Telephone & Telegraph Corp.*, 756 F.2d 1161 (5th Cir.1985). The Banks direct this Court's attention to the *Cates* holding that

> any claims for damages which Cates suffered by reason of diminution in value of his partnership interest, or his share of partnership income, or his salary or bonus from the partnerships or their businesses, by reason of breach of such

agreements, or tortious interference with such businesses, or anticompetitive conduct interfering with or limiting or "taking over" such businesses or their activities, are in effect subsumed within the causes of action of the partnerships (footnote omitted) and do not afford Cates (or his legal representative) a separate, individual cause of action.

*Id.* at 1181.

The Plaintiffs, in turn, also rely upon *Cates* to support their contention that their claims are not partnership claims, but are similar to those allegations of the *Cates* complaint which the Court suggested might be individual rather than partnership claims. Among those claims which the *Cates* court characterized as being "not so clearly assertions of partnership claims" were Cates' allegations "that *after* destruction of the partnership businesses, defendants 'boycotted Cates in the insurance industry ...,' " that "there was an effort to drive Cates individually out of the insurance business," and that there was a "conspiracy among the defendants and [other partners]." *Id.* at 1182 (emphasis in original).

The Court finds that a careful analysis of the *Cates* opinion supports the Plaintiffs' contention that they have standing as minority partners to assert the allegations set forth in their pleadings.

> The *Cates* opinion makes it clear that, in a proper case—one where the controlling partners, for improper, ulterior motives and not because of what they in good faith believe to be the best interests of the partnership, decline to sue on a valid, valuable partnership cause of action which it is advantageous to the partnership to pursue—Texas law would afford *some* remedy to the minority partner or partnership interest owner *other than merely* a damage or accounting suit against the controlling partners, at least where the latter would not be reasonably effective to protect the substantial rights of the minority.

*Id.* at 1178 (emphasis in the original).

The *Cates* court outlined several possible remedies which might be available to such

a partner/plaintiff. The court suggested that the individual partner might maintain suit "either derivatively in the name of the partnerships, or for his percentage of such claims, or alternatively [might] ... have action on the case deferred until a receivership application could be acted on ... or the partnerships' winding up could be completed." *Id.* at 1180.

The *Cates* court, while declining to define precisely what sort of impropriety would authorize a minority partner to maintain a derivative suit or have the other alternative relief suggested above, stated that such relief would be authorized

> at least where the controlling nonconsenting partners have conspired with the defendant third party in committing some material part of the wrongs complained of and have, in bad faith for their own personal interests and not with a view of the best interests of the partnerships, colluded with the third party to prevent the suit.

*Id.* at 1179.

The Plaintiffs in the instant case have clearly made such allegations. They have thus alleged the type of "exceptional circumstances," *Id.* at 1176, which would authorize an individual partner to sue on a partnership-related claim.

### THE BANKRUPTCY ISSUE

If the case before us involved simply a suit by a minority partner, this Court would not hesitate to find that, under the facts in this case, the Fifth Circuit's *Cates* opinion grants the Partner/Plaintiffs standing to assert each partnership cause of action they have alleged. But this case is further complicated by the fact that RRL, the limited partnership of which Plaintiffs are partners, is currently involved in bankruptcy proceedings. While the *Cates* opinion holds that a minority partner may assert a claim that a controlling partner—for improper motives—refuses to pursue, it does not clarify whether those claims become individual claims or remain partnership claims, asserted by the Plaintiffs on behalf of the partnership. If the claims do in fact remain partnership

claims, when the partnership is also, as it is here, the debtor in bankruptcy, those claims would be property of the estate, and Plaintiffs would be unable to assert them. *See American National Bank of Austin v. MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir.1983). Only if the claims are Plaintiffs' individual causes of action may Plaintiffs assert them.

While *Cates* grants standing to sue under the circumstances alleged by the Partner/Plaintiffs, it does not provide a definitive answer to the question of whether suit must be on behalf of the partnership or may be pursued by Plaintiffs as individuals. Defendants direct the Court's attention to the *Cates* court's statement that

> any claims for damages which Cates suffered by reason of diminution in value of his partnership interest, or his share of partnership income, or his salary or bonus from the partnerships or their businesses, by reason of breach of such agreements, or tortious interference with such businesses, or anticompetitive conduct interfering with or limiting or "taking over" such businesses or their activities, are in effect *subsumed within the causes of action of the partnerships (footnote omitted) and do not afford Cates ... a separate, individual cause of action.*

*Cates,* 756 F.2d at 1181 (emphasis added). Plaintiffs, however, point to the fact that the *Cates* court categorized certain claims as "not so clearly assertions of partnership claims." Among the claims so categorized are "allegations of conspiracy among the defendants and [the majority partners which] ... may suggest a wrongful interference with Cates' relations with the partnerships as such." *Id.* at 1182. It is clear that such claims *could* be asserted as partnership claims. The *Cates* court expressly suggested as a possible remedy a derivative suit in the name of the partnership. *Id.* at 1180. The *Cates* court did not expressly state that such claims could be asserted as individual claims. However, by characterizing such allegations as "not so clearly assertive of partnership claims," the *Cates* court suggested that such claims

may be asserted as an individual cause of action. *Cates,* 756 F.2d at 1182.

Because the *Cates* opinion does not resolve this matter, this Court has looked to other jurisdictions for further guidance. A similar fact pattern is found in *Mannaberg v. Herbst,* 45 N.Y.S.2d 197 (Sup.Ct.N.Y. County 1943), *aff'd* 267 App.Div. 818, 47 N.Y.S.2d 100, *aff'd,* 293 N.Y. 657, 56 N.E.2d 255 (1944). In *Mannaberg,* the plaintiff alleged that the defendant paid a secret consideration to his copartner, individually. In exchange for this consideration the copartner allegedly used false representations to induce the plaintiff to consent to the sale to defendant of corporate stock owned by the partnership. In holding that the plaintiff/partner could sue on his own behalf, the *Mannaberg* court stated that

> where one partner and a third person by fraud or breach of fiduciary duty cause a disposition, waste, or diminution of partnership property under circumstances rendering the third person liable therefor, the act of the third party at least must be regarded ... as an *individual wrong to each other partner for which each may recover his own damages.*

*Id.* at 201 (emphasis added). A Wisconsin district court in *Hauer v. Bankers Trust, New York Corp.,* 509 F.Supp. 168, 175 (E.D.Wis.1981), employed a narrower analysis. In *Hauer,* the court clearly distinguished between injury to a partnership and individual injuries such as disruption of the Plaintiff's relationship with the partnership.

■ Although the reasoning of the *Mannaberg* decision is persuasive, and has been cited with approval by the Second Circuit,[3] this Court does not find, based on the *Cates* decision, that the Fifth Circuit would permit Plaintiffs to assert claims related to partnership property as individual claims. Rather, it appears that the Fifth Circuit

would adopt the analysis set forth in *Hauer.* As in *Hauer,* the *Cates* court appears to make a distinction between claims asserting damage to a partner's share of his or her partnership interest or contribution and claims alleging a wrongful interference with the partners relationship with the partnership and copartners. The former are properly viewed as partnership claims, while the latter may be characterized as individual claims.

■ The Court finds that the Partner/Plaintiffs' claims for conversion and damages for destruction of property, to the extent that those causes of action relate to money or property contributed by Plaintiffs to RRL, properly belong in the latter category, characterized in *Cates* as partnership claims. Although ordinarily *Cates* would permit partner/plaintiffs who assert collusion between their copartners and defendants to assert those claims, they must assert them on behalf of the partnership. Because the RRL partnership is in bankruptcy, these claims are property of the estate, and the Partner/Plaintiffs are precluded from asserting them. Such claims must therefore be dismissed. By contrast, the allegations of aiding and abetting breach of fiduciary duty and tortious interference are claims alleging an interference with the Partner/Plaintiffs relationship with their copartner and with the partnership and thus the Partner/Plaintiffs properly may assert them as individual claims.

The proper categorization of the Partner/Plaintiffs' RICO claims and common law fraud claims is not so clear.[4] Certainly, the RICO and fraud allegations, as alleged by Plaintiffs, would have resulted in diminution of the value of the Partner/Plaintiffs' contribution to the partnership. The claims, however, might also be construed as involving, at least as an end

---

**3.** *See Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1075 n. 23, 1076 (2d Cir.1977).

**4.** Defendants do not quarrel with the Partner/Plaintiffs' standing to maintain their security fraud claims as individuals. It is assumed therefore that, to the extent that the RICO and common law fraud claims state injury to Plaintiffs due to the alleged fraudulent inducement of Plaintiffs to enter the partnership and thus to purchase the alleged securities, the ability of Plaintiffs to assert the claims as individual causes of action is not disputed.

result, the wrongful interference with Plaintiffs' relationship with the partnership. The Court therefore declines to dismiss these claims in their entirety, but only dismisses them as they relate to damage to the Partner/Plaintiffs' contribution to the partnership.[5]

## CERTIFICATION FOR APPEAL

This Court finds that the standing issues raised in Defendants' Motion to Dismiss involve controlling questions of law as to which there is substantial ground for difference of opinion. Furthermore, the Court finds that resolution of these issues would materially advance this litigation. The Court, therefore, pursuant to 28 U.S.C. § 1292(b), certifies for interlocutory appeal the issue of Plaintiffs' standing to assert partnership-related claims. The Court, however, declines to stay further action in this case pending appeal.

In accord with the above findings, it is hereby

ORDERED that Defendants' Motion to Dismiss be, and is hereby, GRANTED to the extent that the claims of the Partner/Plaintiffs for conversion of their contribution to the partnership and damages for destruction of partnership property be, and are hereby, DISMISSED. It is further ORDERED that the Partner/Plaintiffs' RICO and common law fraud allegations be DISMISSED only to the extent that they relate to damage to the Partner/Plaintiff's

contribution to the partnership. In all other regards Defendants' motion is DENIED.

5. The Court is of the opinion that an accounting will not be required in this action in order to compute damages. While the *Mannaberg* court suggested that an accounting might be necessary, in *Mannaberg,* unlike in the instant case, the plaintiffs were asserting causes of action that involved damage to their partnership property interest. *Mannaberg, supra* at 200. The instant case, following this order, will involve only the assertion of causes of action which allege wrongful interference with the partners relationship with the partnership and copartners. As such, the allegations are similar to those in *Whitney v. Citibank,* 782 F.2d 1106 (2d Cir.1986). Plaintiff Whitney, a partner in a limited partnership, brought action against, *inter alia,* Citibank based on allegations of his copartners' breach of fiduciary duty and the bank's

inducement of and knowing participation in that breach. *Id.* at 1107. Although in *Whitney* an accounting was actually made because Whitney was also suing his copartners, the recovery against Citibank did not precisely reflect Whitney's partnership contribution. In upholding the damage award against Citibank in the face of Citibank's contention that the amount was speculative, the Second Circuit held: "When a difficulty faced in calculating damages is attributable to the defendant's misconduct, some uncertainty may be tolerated." *Id.* at 1118 (citations omitted).

This Court is, likewise, of the opinion that, should Defendants be found liable to Plaintiffs, damages can be fairly estimated without recourse to a partnership accounting.