### In re PHAR–MOR, INC. SECURITIES LITIGATION.

### OFFICIAL UNSECURED CREDITORS' COMMITTEE OF PHAR–MOR, INC., Plaintiff,

v.

Ivan BOWEN, II, et al.; Giant Eagle of Delaware, Inc., et al.; Sears Roebuck and Co., et al.; the Edward J. DeBartolo Corporation, et al.; Irwin J. Askow, et al.; Richard Rosenbloom and Carol Rosenbloom, et al.; Westinghouse Credit Corporation, et al.; MFS Lifetime Emerging Growth Fund, et al.; T. Rowe Price New Horizons Fund, Inc., et al.; and Does 1 Through 10,000 inclusive, Defendants.

Civil Action Nos. 92–1938, 94–0273.
MDL No. 959.
Master File No. Misc. 93–96.

United States District Court,
W.D. Pennsylvania.

March 14, 1994.

Abraham Singer, Stuart E. Hertzbert, I. William Cohen and Joel D. Applebaum, Detroit, MI, for plaintiff.

Eric Seiler, Hal Neier, Leonard M. Rosen and Amy R. Wolf, New York City, for defendants.

### *OPINION*

ZIEGLER, Chief Judge.

Pending before the court is the motion of plaintiff, the Official Unsecured Creditors' Committee of Phar–Mor, Inc. (the "Committee"), for a preliminary injunction to stay the civil actions (the "Equity Actions") brought by defendants against Coopers & Lybrand ("Coopers"), Phar–Mor's former auditors, which are part of the consolidated proceedings in *In re Phar–Mor, Inc. Securities Litigation*, MDL No. 959 (W.D.Pa.). For the reasons that follow, we will deny the Committee's motion.

The complaint and the motion for preliminary injunction were initially filed in the United States Bankruptcy Court for the Northern District of Ohio as Adversary Proceeding No. 93–4086 in *In re Phar–Mor, Inc., et al.*, Case Nos. 92–41599 through 92–41614. On January 31, 1994, prior to the resolution of the motion, the Judicial Panel on Multidistrict Litigation transferred the action to this court as part of the above-cited consolidated proceedings.

The instant controversy arises out of the fraud and financial statement manipulation perpetrated by certain employees of Phar–Mor, Inc. (the "Debtor"). As a result of the fraud, Phar–Mor and related entities filed voluntary petitions for relief under title 11 of the Bankruptcy Code. Reorganization proceedings are on-going in the bankruptcy court.

In addition to the bankruptcy proceedings, the Phar–Mor fraud has also given rise to a number of civil suits filed by creditors and equity investors of Phar–Mor against Coopers and others. These actions have all been consolidated in this court by the multidistrict panel.

Defendants (or "Equity Plaintiffs") are all equity investors in Phar–Mor. Each is a plaintiff to one of the Equity Actions. The Equity Actions assert claims against Coopers for violations of federal and state securities laws, fraud, and negligent misrepresentation. The claims stem from Coopers' alleged negligent or fraudulent audits of Phar–Mor's financial statements during the period of the fraud leading to the issuance of unqualified audit opinions. In essence, the Equity Plaintiffs contend that but for Coopers' negligent or fraudulent acts, they would not have invested money in Phar–Mor. Also part of the multidistrict litigation is an action brought by the Debtor against Coopers asserting claims of negligence and breach of contract (the "Coopers Litigation").

The Committee seeks a preliminary injunction pursuant to either or both of two sections of the Bankruptcy Code. Initially, the Committee contends that the Equity Actions must be stayed pursuant to 11 U.S.C. § 362. In addition, the Committee asserts that the Equity Actions should be stayed pursuant to 11 U.S.C. § 105. We disagree.

### I. THE EQUITY ACTIONS DO NOT VIOLATE SECTION 362 OF THE CODE

The Committee first argues that prosecution of the Equity Actions violates § 362(a)(3), which provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of any act to obtain possession of property of the estate or to exercise control over property of the estate."

■ First, we hold that the securities law and related claims asserted in the Equity Actions belong exclusively to the Equity Plaintiffs and are not a part of the "property of the estate". The claims of the Equity Plaintiffs seek recovery of money that they invested in Phar–Mor allegedly in reliance on the unqualified audit opinions of a non-bankrupt third party, Coopers. The claims and the alleged harm are distinct and personal to each Equity Plaintiff and are not derivative of the Debtor's claims against Coopers. *See Edwards v. Armstrong World Industries, Inc.,* 6 F.3d 312, 318 (5th Cir.1993) ("property of the debtor cannot be extended to include the separate obligations of the non-bankrupt [third party]"); *Begier v. Price Waterhouse,* 81 B.R. 303, 305 (E.D.Pa.1987) (action for negligence against accounting firm alleging that creditors relied on false financial statements are personal to creditors and cannot be asserted by trustee of debtor).

■ The Committee argues that even if the Equity Actions are not property of the estate, a stay is required because they will adversely affect or diminish property of the estate, to-wit, the Debtor's claims against Coopers in the Coopers Litigation. *See* 11 U.S.C. § 541(a)(1) ("property of the estate" defined to include "all legal or equitable interests of the debtor in property"). In other words, the Committee asserts that the Equity Actions improperly attempt "to obtain or exercise control over property of the estate." We disagree.

The Committee asserts that the Equity Actions will affect or diminish the Coopers Litigation claims in essentially two ways. First, the Committee argues that the continued prosecution of the Equity Actions will impede the Debtor's ability to reach a settlement of the Coopers Litigation and will also interfere with the Debtor's ability to prosecute its claims against Coopers. Second, the Committee contends that the Equity suits may result in a dilution of the Debtor's recovery against Coopers.

With respect to the initial argument propounded by the Committee, we recognize that settlement of the Coopers Litigation is problematic. In our view, however, a stay of the Equity Actions is unlikely to materially advance the probability of settlement. Regardless of whether the Equity actions are stayed, settlement of the Coopers Litigation is not likely to occur unless a global settlement can be reached involving all claims by all parties. A stay of the Equity Actions would not eliminate Coopers' potential liability to the Equity Plaintiffs but would merely delay the adjudication of the Equity Plaintiffs' claims.

Moreover, the Committee's argument that prosecution and settlement of the Coopers Litigation will be impeded is belied by the fact that the Debtor has failed to pursue the instant stay on its own behalf. The Debtor's refusal to seek a stay indicates its belief that a stay of the Equity Actions is unnecessary and that such actions will not impede the Debtor in its prosecution of the Coopers Litigation.[1]

Finally, the Committee's fears that the Equity Actions may adversely affect the Coopers Litigation because they may result in conflicting judgments are unfounded. Any judgments rendered in the Equity Actions will have no effect on the Debtor's ability to prosecute its claims in the Coopers Litigation.

With respect to the Committee's second argument, there is no basis upon which we can conclude that prosecution of the Equity Actions will affect Cooper's ability to satisfy any judgment awarded to the Debtor. Coopers is a solvent, non-bankrupt entity and there is no evidence of record that it will be unable to satisfy any judgments which may ultimately be entered against it. In addition, the Committee can point to no legal authority which would elevate the claims and the right to redress of the Debtor over the separate and distinct claims of the Equity Plaintiffs. While the Bankruptcy Code places the rights of creditors of the bankrupt over those of equity owners of the bankrupt, we emphasize that Coopers is neither bankrupt nor insolvent. Therefore, application of the Code's

---

1. In contrast, the Debtor has sought to stay the civil actions of its creditors against Coopers in

*Phar–Mor, Inc. v. General Electric Capital Corp., et al.,* 166 B.R. 57.

priority rights to claims against Coopers would simply be inappropriate.[2]

The cases cited by the Committee in support of its argument that the automatic stay should extend to the Equity Actions are inapposite. In *A.H. Robins Company, Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), the Court of Appeals stayed the actions brought against non-bankrupt defendants who were entitled to indemnification under the debtor's insurance policy or who qualified as additional insureds under the policy. The Court recognized that the debtor's insurance policy was one of its most important assets and that any action which may diminish that asset was subject to the stay. 788 F.2d at 1001. *See also, In re Johns–Manville Corp.*, 26 B.R. 420 (Bankr.S.D.N.Y.1983); *aff'd*, 40 B.R. 219 (S.D.N.Y.1984) (Direct actions by creditors against debtor's insurers stayed because insurance policies and proceeds constituted substantial property of the estate). As rehearsed, the Equity Actions will not materially affect or diminish the Debtor's claims in the Coopers Litigation. While the Actions may have an effect on the availability of insurance proceeds under the Coopers' policy, the instant situation materially differs from *A.H. Robins* in that the policy here is not an asset of the Debtor, and the Committee has failed to establish that Coopers would be unable to satisfy judgments that exceed the insurance coverage.

In *In re S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987), another case relied on by the Committee, the Court of Appeals held that claims against the non-debtor defendants based solely on the theory that the defendants were "alter-egos" of the debtor are automatically stayed. In so holding, the Court recognized that if plaintiffs were successful in establishing that the defendants were the debtor's alter-ego, the pool available to all creditors of the debtor would be increased by the entire amount of the assets of the defendants. 817 F.2d at 1153. In other words, the property of the defendants would be included as part of the property of the estate and, therefore, any creditor action to obtain property of the defendants would violate § 362(a)(3). *In re S.I. Acquisition* has no bearing on the instant action because the Debtor and Coopers are separate, unaffiliated entities, and while the Debtor may be entitled to an award of damages from property of Coopers, a judgment in favor of the Debtor would not transform the entire assets of Coopers into property of the Debtor.

The Committee's reliance on *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983), is also misplaced. In that case, an action against a non-bankrupt individual who had controlled the debtor before it went into involuntary bankruptcy was stayed pursuant to § 362(a)(3). The gravamen of the civil action was that the individual had fraudulently conveyed assets of the debtor so as to place them outside the reach of the debtor's creditors. The Court held that "[p]roperty fraudulently conveyed ... remains, despite the purported transfer, property of the estate within the meaning of ... section 541(a)(1)" and, therefore, any fraudulent transfer action brought by a creditor is an action belonging to the debtor. 714 F.2d at 1277.

In conclusion, we hold that the Equity Actions do not constitute acts to obtain or exercise control over the property of the Debtor's estate and, therefore, we hold that § 362(a)(3) does not apply to stay the Equity Actions.

## II. THE COMMITTEE IS NOT ENTITLED TO AN INJUNCTION PURSUANT TO SECTION 105(A) OF THE CODE

■ The Committee also urges that we enjoin the Equity Actions pursuant to § 105(a) of the Code, which provides that:

The court may issue any order, process, or judgment that is necessary or appropriate

---

**2.** In this context, the Committee's reliance on *Gaff v. Federal Deposit Insurance Corp.*, 919 F.2d 384 (6th Cir.1990) is misplaced. In *Gaff*, the Court of Appeals borrowed the Bankruptcy Code's absolute priority rules in creating a priority in favor of the FDIC over private shareholders of an insolvent bank. In doing so, the Court determined that a priority in favor of the FDIC would further the underlying purposes of the national bank insurance system. 919 F.2d at 394. We agree with the Equity Plaintiffs that *Gaff* should be limited to claims in which the FDIC is a plaintiff and we will not apply the holding to the instant dispute.

to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

The Committee contends that the Equity Actions should be stayed because their continued prosecution threatens the integrity of the reorganization process. Again we disagree.

■ In determining whether to issue injunctive relief under § 105(a), we must consider the same factors for the grant of a preliminary injunction. The movant must establish that: (1) it has a strong likelihood of success on the merits, (2) irreparable injury if an injunction is not issued, (3) the issuance of the injunction would not cause substantial harm to others, and (4) the issuance of an injunction would serve the public interest. *In re Landmark Air Fund II,* 19 B.R. 556 (Bankr.N.D.Ohio 1982). Because we hold that the Committee has failed to establish that the Debtor would suffer irreparable harm in the absence of an injunction, we will deny the motion.[3]

■ The Committee has the burden of justifying the need for an injunction "by clear and convincing circumstances outweighing potential harm to the party against whom [the injunction would be] operative." *Williford v. Armstrong World Industries, Inc.,* 715 F.2d 124, 127 (4th Cir.1983). As shown below, the Committee has failed to satisfy this burden.

Initially, we note that the Committee's task in attempting to establish the need for an injunction to protect the Debtor is made even more difficult by the fact that, as previously discussed, the Debtor has not sought an injunction on its own behalf. If the Equity Actions were likely to cause irreparable harm to the Debtor, we presume that the Debtor would have moved for the injunction. *See In re Johns–Manville Corp.,* 26 B.R. 405,

417 (S.D.N.Y.1983) (Debtor's indifference to the "requested relief is suggestive of a lack of irreparable harm to the debtor's estate if the injunction does not issue").

Addressing the Committee's argument, we find that the attempt to establish irreparable harm fails to set forth the type of "significant and direct" harm necessary to merit the issuance of an injunction. *In re Continental Air Lines,* 61 B.R. 758, 781 (S.D.Tex.1986). The Committee contends that the Debtor will suffer irreparable harm due to the incurrence of exorbitant defense fees and costs by Coopers in the multiple suits brought against the accounting firm. The Committee asserts that these fees and costs will dissipate any potential recovery by the Debtor in the Coopers Litigation. We agree with the Equity Plaintiffs that the costs of defense to Coopers is of no moment to the Debtor absent a showing that Coopers will be unable to satisfy any judgments entered against it.

The Committee also claims that, to the extent the Equity Plaintiffs gain judgments in their civil actions, the judgments will reduce the Debtor's recovery in the Coopers Litigation. We reject this argument. As rehearsed, it is unlikely that the Equity Actions will have any effect on the Coopers Litigation. Moreover, we will not subrogate the rights of the Equity Plaintiffs to bring personal and separate claims against Coopers to the rights of the Debtor. In short, the Debtor has no greater rights to assert its claims against Coopers than the Equity Plaintiffs precisely because the Equity Plaintiffs are not attempting to assert claims belonging to the Debtor.

We recognize that the existence of independent claims against Coopers by the Equity Plaintiffs may result in the Equity Plaintiffs receiving damages in excess of what they may receive from a reorganization plan. In our view, however, such a result does not contravene the purposes of the Bankruptcy Code. Indeed, the Bankruptcy Code was designed to protect the Debtor and to prioritize claims by creditors and equity owners against the Debtor's estate. It was not designed to destroy independent claims that

---

3. Our holding that the Committee has failed to establish irreparable harm, a prerequisite to the issuance of an injunction, makes consideration of the remaining factors unnecessary.

the creditors and equity owners may have against non-bankrupt entities, or place a higher priority on the Debtor's claims against such entities.

We hold that the Debtor will not be irreparably harmed in the absence of an injunction staying the Equity Actions, and we will deny the Committee's request for a preliminary injunction under § 105(a).