In re RELIANCE ACCEPTANCE GROUP, INC., Reliance Acceptance Corporation, Reliance Acceptance Corp. of Arizona, Reliance Acceptance Corp. of Colorado, Reliance Acceptance Corp. of Florida, Reliance Acceptance Corp. of Georgia, Reliance Acceptance Corp. of Illinois, Reliance Acceptance Corp. of Indiana, Reliance Acceptance Corp. of Iowa, Reliance Acceptance Corp. of Kentucky, Reliance Acceptance Corp. of Minnesota, Reliance Acceptance Corp. of Missouri, Reliance Acceptance Corp. of Michigan, Reliance Acceptance Corp. of New Mexico, Reliance Acceptance Corp. of Nevada, Reliance Acceptance Corp. of North Carolina, Reliance Acceptance Corp. of Ohio, Reliance Acceptance Corp. of Oregon, Reliance Acceptance Corp. of South Carolina, Reliance Acceptance Corp. of Tennessee, Reliance Acceptance Corp. of Texas, Reliance Acceptance Corp. of Utah, and Reliance Acceptance Corp. of Washington, Debtors.

Reliance Acceptance Group, Inc., Reliance Acceptance Corporation, Reliance Acceptance Corp. of Arizona, Reliance Acceptance Corp. of Colorado, Reliance Acceptance Corp. of Florida, Reliance Acceptance Corp. of Georgia, Reliance Acceptance Corp. of Illinois, Reliance Acceptance Corp. of Indiana, Reliance Acceptance Corp. of Iowa, Reliance Acceptance Corp. of Kentucky, Reliance Acceptance Corp. of Minnesota, Reliance Acceptance Corp. of Missouri, Reliance Acceptance Corp. of Michigan, Reliance Acceptance Corp. of New Mexico, Reliance Acceptance Corp. of Nevada, Reliance Acceptance Corp. of North Carolina, Reliance Acceptance Corp. of Ohio, Reliance Acceptance Corp. of Oregon, Reliance Acceptance Corp. of South Carolina, Reliance Acceptance Corp. of Tennessee, Reliance Acceptance Corp. of Texas, Reliance Acceptance Corp. of Utah, and Reliance Acceptance Corp. of Washington, Plaintiffs,

v.

Seymour I. Levin, Arnold Curnyn, Michael Sabbia, Brian J. O'Connor, Walter W. Goldberg, Ira Rollover, William Eric Graham, Ronald P. Graham, Keith Jacobs, Juli Jacobs, Michael Wien, Nannette Wien, Michael Wien as Custodian for Andrew Richard Wien, a minor, Michael Wien, as Custodian for Jason Stephen Wien, Philip Hansen, Darius Antia, David Aswad, Paul Aswad, Charles Boornazian, Daniel Carlson, Gilbert A. Fuiten,

---

Claudia Goethe, Douglas Hart, Ernie Krueger, Mike Malik, John Mazzara, Duane Phillips, Carl Rech, Paul Senior, Leonard Stolarski, Sr., Larry Walley, Andrew Zych, Pama Partnership, and Delano Valek, Defendants.

Misc. No. 98–MC–103–RRM.
Bankruptcy No. 98–288–PJW.
Adversary Nos. A–98–171, AP–98–52.

United States District Court,
D. Delaware.

June 2, 1999.

Laura Davis Jones, Robert S. Brady, Edwin J. Harron, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; James H.M. Sprayregen, Steven C. Florsheim, Adam P. Merrill, Kirkland & Ellis, Chicago, Illinois; counsel for debtors and plaintiffs.

R. Bruce McNew, Taylor, Gruver & McNew, Greenville, Delaware; David B. Kahn, Mark E. King, David B. Kahn & Associates, Ltd., Northfield, Illinois; Helen J. Hodges, Jeffrey D. Light, Milberg Weiss Bershad Hynes & Lerach, LLP, San Diego, California; Michael S. Etkin, John K. Sherwood, Andrew Pincus, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, PC, Roseland, New Jersey; counsel for The Sabbia Group and defendants.

Bruce E. Jameson, Prickett, Jones, Elliott & Kristol, Wilmington, Delaware; counsel for Bruce Taylor, Sidney J. Taylor, Jeffrey W. Taylor, Cindy Taylor Bliel, Iris Taylor, Taylor Family Partnership and Taylor Capital Group, Inc.

Neal J. Levitsky, Agostini, Levitsky, Isaacs & Kulesza, Wilmington, Delaware; Randall I. Marmor, Clausen Miller PC, Chicago, Illinois; counsel for St. Paul Mercury Insurance Company.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is an appeal from an order entered by the Bankruptcy Court on October 5, 1998 granting the Debtors' motion to preliminarily enjoin certain shareholders from

pursuing litigation in the United States District Court for the Western District of Texas. The shareholders have appealed. This is the court's decision on the appeal.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

The court draws the following facts from the record of the proceedings in the Bankruptcy Court.

Irwin H. Cole and Sidney J. Taylor formed Cole Taylor Financial Group, Inc. ("the Company") in the early 1980's as a banking and consumer loan business that operated through three wholly-owned subsidiaries: Cole Taylor Bank; CT Mortgage Company, Inc; and Cole Taylor Financial Company, Inc. They took the Company public in 1994, with members of the Taylor and Cole families each retaining approximately 25% of its common stock.

In early 1996, the Taylors proposed a transaction to the Company's board whereby the Taylors would in essence transfer their stock to the Company in exchange for the Company's stock in Cole Taylor Bank and CT Mortgage Company. On June 12, 1996, the Company's board met and approved the proposal and scheduled a shareholders' meeting to vote on the transaction. On November 16, 1996 the shareholders met and voted in favor of the transaction.

The transaction closed on February 12, 1997 at which time Cole Taylor Financial Group's stock was trading at $27 per share. Thereafter, the Company changed its name to Reliance Acceptance Group, Inc. On February 14, 1997, the Company announced it would take a "significant" charge for the fourth quarter of 1996 to bolster loan reserves. Thereafter, it reported a loss for the fourth quarter of 1996 and for the first three quarters of 1997. The Company eventually suspended its dividend. By the end of 1997 its stock was trading at $1 per share.

Beginning in October 1997, shareholders began filing lawsuits seeking damages they

had allegedly suffered as a result of the transaction. For example, in an action filed in Delaware's Chancery Court, members of the Cole family sued the Taylors and certain former officers and directors of the Company alleging that the transaction was fraudulent and that the defendants had breached fiduciary duties in proposing and supporting it. The plaintiffs sought an order imposing a constructive trust on the shares of the Bank and Mortgage Company and on the defendants' profits. They also sought compensatory damages.

Class actions based on alleged violations of the Securities and Exchange Act of 1934 were eventually consolidated in an action filed in the United States District Court for the Western District of Texas. That case is captioned *Michael Sabbia, et al. v. Jeffrey W. Taylor, et al.*, SA–98–CA–0044 OG and has been referred to by the parties as the Sabbia case or the Shareholders' Litigation. In an amended complaint in that action, certain shareholders (hereinafter sometimes referred to as the Shareholders) sued the Taylors, the Coles, former officers and directors of the Company, the Company's accountants, KPMG Peat Marwick, and the Company's investment bankers, Chicago Corp. and Sandler O'Neill & Partners, alleging that under the transaction the Taylors had taken the Company's only valuable asset and left the Company and public shareholders with a business whose value had been grossly overstated. The Shareholders allege they were deceived by the Company's false and misleading proxy statement distributed prior to the vote, in that it led them to believe the property the Taylors were transferring to the Company had substantial value, when it did not. They seek compensatory damages, fees and costs.

On February 9, 1998, Reliance and its subsidiaries filed petitions in the Bankruptcy Court for relief under Chapter 11. On that day, Judge Peter J. Walsh entered an order appointing Robert F. Coleman & Associates to serve as special counsel for

the Debtors for the purpose of investigating any and all potential causes of action that the Debtors may have, "including those arising from the stock split-off transaction."

On February 27, 1998, the Debtors commenced adversary proceedings against the plaintiffs in nine putative class action lawsuits, seeking among other things to enjoin them from proceeding with their litigation. On March 27, 1998, the court entered an agreed upon preliminary injunction, which it has extended a number of times.

On July 2, 1998, the Bankruptcy Court entered an order approving a Plan of Reorganization. The Plan provides that all of the Debtors' causes of action are preserved for the post-confirmation estates, establishes a litigation trust and provides for the appointment of a representative to pursue any claims. Any recovery will be distributed to creditors and shareholders pursuant to a formula set out in the Plan. The bankruptcy court has appointed David Allen as Estate Representative under the Plan.

On July 21, 1998, the Bankruptcy Court heard oral argument on the Sabbia plaintiffs' motion to dismiss the Debtors' complaint and the Debtors' motions for summary judgment and to extend the preliminary injunction. In their motion for summary judgment, the Debtors sought an order declaring that the Estate owned the claims asserted by the Shareholders, that allowing the Shareholders to prosecute those claims is likely to interfere with the Estate's cases, and that allowing the Shareholders to proceed with their claims against former officers and directors would likely interfere with the Estate's ability to recover under its directors and officers' liability insurance policies. The Debtors sought an order permanently enjoining the Sabbia plaintiffs from pursuing their claims.

On September 4, Allen filed an adversary proceeding against the Taylors alleging the split-off transaction was a fraudulent transfer that should be voided and that claims they had filed in the bankruptcy proceeding for indemnification for fees and expenses incurred in defending the shareholder actions should be disallowed. That same day, Allen filed a separate action against the Taylors, the law firm of Katten Muchin & Zavis, the accountants KPMG Peat Marwick and others, alleging, in essence and over the course of thirteen counts, that the split-off transaction was a fraudulent transfer, that the Taylors and others had breached fiduciary duties owed to the corporation, and that KPMG Peat Marwick and Katten, Muchin & Zavis were negligent.

In an October 5, 1998 decision, the Bankruptcy Court found the injunction against the Sabbia plaintiffs should stay in place for three reasons. First, the Bankruptcy Court agreed with the Debtors that the Estate and Shareholder's Litigation sought the same remedy, rescission or rescissory damages. The Bankruptcy Court found the Estate and the Shareholders are, therefore, pursuing the same cause of action for which there can only be one recovery and if the Shareholders were allowed to proceed, their recovery would prevent the Estate from receiving its full measure of damages. The Bankruptcy Court found that by continuing the injunction, the Estate would be allowed to proceed with its claims and if it is successful, shareholders and creditors would share in the proceeds through a formula for division based on bankruptcy law principles as established in the Plan of Reorganization.

Second, the Bankruptcy Court agreed with the Debtors that the Estate has a property interest in the proceeds from the directors and officers' liability insurance policies and that enjoining the Shareholders' Litigation will preserve the proceeds and maximize the value of the Estate.

Third, the Bankruptcy Court agreed with the Debtors that prosecution of the Shareholders' Litigation would interfere with the Estate's ability to pursue its own causes of action due to the identity of

facts, subject matter, discovery materials, parties, witnesses, remedies, and theories of liability, as well as the possibility of inconsistent judgments. The Bankruptcy Court found that if the Shareholders were allowed to proceed, there may not be sufficient assets available to satisfy the Estate's claims, as the individual directors do not have deep enough pockets to satisfy all claims against them. In addition, the Bankruptcy Court found, "[i]f the Sabbia Group loses its case, it could severely prejudice the Estate's claims, potentially binding the Estate with adverse findings from the Shareholder Litigation."

The Bankruptcy Court concluded that the injunction should remain in place as there was a very substantial likelihood that the Debtors will prevail on the merits of the claims in their action against the Shareholders and that the Debtors will be irreparably harmed without injunctive relief. The Bankruptcy Court entered an order on October 5, 1998 denying the Shareholders' motion to dismiss, enjoining them from proceeding with the Shareholders' Litigation, and directing that the case be set for trial.

The Sabbia plaintiffs filed a motion with this court for leave to take an interlocutory appeal from the Bankruptcy Court's preliminary injunction order. This court heard argument on that motion on January 27, 1999. The parties have now completed briefing on the appeal.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

28 U.S.C. § 158(a) governs the court's jurisdiction to review orders of the bankruptcy court. It provides that district courts have jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." Section 158(c)(2) pro-

vides that "[a]n appeal under subsection (a) ... of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts...."

28 U.S.C. § 1292(a) governs appeals from the district courts to the courts of appeals and provides that a party has an appeal as of right to the court of appeals from a district court order granting a preliminary injunction. *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981). *Cf.* 11 *Wright & Miller, Federal Practice and Procedure* § 3923 ("An order that prohibits a party from pursuing litigation in another court is unquestionably an injunction for purposes of interlocutory appeal under 28 U.S.C. § 1292(a)(1).").

■ Consequently, the court looks to sections 158(c)(2) and 1292(a) to find the defendants have a right to appeal to this court at this time the Bankruptcy Court's preliminary injunction order. *See, e.g., In re Reserve Production, Inc.,* 190 B.R. 287, 290 (E.D.Tex.1995); *In re Ernst & Young, Inc.,* 135 B.R. 517, 521 (S.D.Ohio 1991); *In re Bertoli,* 1987 WL 8196, *4 (D.N.J. March 18, 1987).

■ On appeal, the standard of review of questions of law is plenary; the standard of review of findings of fact is whether the bankruptcy court's findings are clearly erroneous. *In re Columbia Gas Sys., Inc.,* 50 F.3d 233 (3d Cir.1995).

### B. Has the Estate Established a Probability of Success on the Merits of Its Claim for a Declaratory Judgment that It Owns the Claims Asserted by the Shareholders?

In its complaint, the Estate asserts three claims for relief against the Shareholders. In a First Cause of Action, the Debtors seek an order declaring that the Shareholders' claims are subject to 11 U.S.C. § 362(a) [1], which provides that the

1. 11 U.S.C. § 362(a) provides in relevant part:

filing of a petition for relief in bankruptcy operates as an automatic stay as to certain actions, including continuation of judicial proceedings against a debtor. In a Second Cause of Action, the Debtors seek a declaration that pursuant to 11 U.S.C. § 510(b)[2], the Shareholders' claims are subordinate to those of senior creditors. In a Third Cause of Action, the Debtors seek a declaration that the Shareholders' claims belong to Reliance.

While the Debtors pressed their subordination claim as a basis for summary judgment and the injunction, the Bankruptcy Court did not speak to it in finding the Debtors are likely to succeed on the merits at trial. Therefore, this court will not address that claim on this appeal.

1. *Should the Shareholders Be Enjoined From Proceeding With Their Litigation Because Their Claims Belong to Reliance?*

■ The Debtors set out their Third Cause of Action in the following two sentences in their complaint:

The claims asserted in the Underlying Litigation all allege damages arising out of the decline in the price of Reliance's stock following the split-off transaction that are common to all shareholders and to the corporation generally. Accordingly the claims asserted are derivative,

belong to Reliance, and only it may pursue them.

■ The Debtors have not pressed this claim for relief in their papers on appeal. The Third Circuit explained the differences between securities and derivative actions in *Hayes v. Gross*, 982 F.2d 104 (3d Cir.1992). Where a corporation has suffered an injury from actionable wrongs committed by its officers and directors, the remedy under a state's corporation laws is a suit on behalf of the corporation. Such a suit may be brought by the corporation, or, in some circumstances, can be brought by the shareholders or creditors on its behalf. Regardless of who initiates the suit, the recovery goes to the corporation. When the action is brought on behalf of the corporation, it is referred to as a derivative action. *See, e.g., Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984) ("In sum, the term 'derivative action' ... has long been understood to apply only to those actions in which the right claimed by the shareholder is one the corporation could itself have enforced in court."); *Rales v. Blasband*, 634 A.2d 927, 932 (Del.Supr.1993) ("The stockholder derivative suit is an important and unique feature of corporate governance. In such a suit, a stockholder asserts a cause of action belonging to the corporation."); *Kramer v. Western Pacific Industries, Inc.*, 546 A.2d 348, 351 (Del.

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . .

**2.** 11 U.S.C. § 510(b) provides:

(b) For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

Supr.1988) ("The distinction between derivative and individual actions rests upon the party being directly injured by the alleged wrongdoings."); *Moran v. Household Int'l. Inc.*, 490 A.2d 1059, 1070 (Del. Ch.), *aff'd*, 500 A.2d 1346 (Del.Supr.1985) ("To set out an individual action, the plaintiff must allege either 'an injury which is separate and distinct from that suffered by other shareholders,' or a wrong involving a contractual right of a shareholder ... which exists independently of any right of the corporation.").

■■■ As Judge Stapleton noted in his opinion for the panel in *Hayes,* a derivative action may state a claim for relief for mismanagement that causes the corporation's stock to decline in value or result in an insolvency that renders creditors' claims uncollectible. Nevertheless, shareholders and creditors cannot recover for these damages in their individual capacities because their loss is the indirect result of the injury to the corporation. In a federal securities case, where a shareholder may state a claim for relief under the Securities Exchange Act and Rule 10b–5 based on the same or similar misconduct as may be asserted in a derivative action, the shareholder seeks relief based on the defendants' breach of duties owed under these federal laws and seeks to recover damages for a distinct injury, such as for example, the difference between an allegedly inflated price he or she paid for stock and the price he or she would have paid had defendants made accurate statements. As the court noted in *Hayes,* these are separate causes of action and allowing the shareholder to pursue a securities claim will neither prejudice the corporation and its other shareholders nor will it permit a double recovery for the same injury.

In this case, while the lawsuits filed by the Shareholders and by the Debtors may be against the same parties and may be based on the same or similar facts, they state different claims for relief. They seek relief for alleged breaches of different duties. They allege different injuries.

And they seek to recover different damages. The Shareholders' claims are not derivative and do not belong to the corporation. Consequently, the Bankruptcy Court should have granted the Shareholders' motion to dismiss this claim for relief.

In the course of presenting their motions, the Debtors recast this issue, so that they no longer are arguing the Shareholders' claims were derivative. Instead, they now argue the parties are seeking the same remedy, rescission or rescissory damages, and, consequently, are pursuing the same cause of action. They suggest that there can be only one recovery for the same cause of action and that the court should, therefore, enjoin the Shareholders so that they do not prevent the Estate from obtaining that recovery. The Bankruptcy Court adopted this analysis.

Perhaps the best place to start with this issue is the basis for the parties' claims for relief. The Debtors claim the Taylors and others defrauded the Company in the split-off transaction. As one remedy for this alleged fraud they will seek to undo or rescind the split-off transaction, return the Company's stock to the Taylors and recover from the Taylors the property they received in the transaction, including Cole Taylor Bank. As a practical matter, it is not clear whether this equitable relief is appropriate or even possible, as it is now more than two years since this transaction closed. But that is an issue for another day. If it is possible to rescind this transaction, the remedy will no doubt be quite complicated and may include an element of rescissory damages. If it is not possible, then perhaps the Debtors will pursue compensatory damages.

The Shareholders, in their class action suit, claim the Taylors and others defrauded them by publishing false and misleading statements that the Shareholders relied on in connection with the purchase or sale of Cole Taylor Group securities. They contend those statements caused the market to over-value the securities, and that once this information was disclosed, the value of

the stock dropped and the Shareholders were injured. As these are actions at law, the Shareholders seek compensatory damages.

The Shareholders have not and probably could not assert a claim on their own behalf to undo the split-off transaction. Nor have they sought equitable relief to undo or rescind the transactions by which they bought and sold the Company's securities.

The Debtors and Shareholders are not, therefore, pursuing the same cause of action. Nor are they seeking to rescind the same transaction. Actually, only the Debtors are seeking or even could seek rescission of the split-off transaction as an alternative remedy to damages.

The Bankruptcy Court erred, therefore, in finding that the Estate and Shareholders were seeking the same remedy, and erred in finding that they were asserting the same cause of action. The Bankruptcy Court should have granted the Shareholders' motion to dismiss the Estate's Third Cause of Action, that the claims asserted in the Shareholders' Litigation belonged to the Estate.

2. *Should the Shareholders Be Enjoined from Proceeding with Their Litigation Pursuant to the Terms of The Automatic Stay in 11 U.S.C. § 362(a)?*

In their First Cause of Action, the Debtors seek an order declaring that the Shareholders' claims are subject to the automatic stay provisions of 11 U.S.C. § 362(a). In their complaint and in the briefing on the motion for a preliminary injunction, the Debtors have identified three grounds for relief under section 362(a). First, they contend the Estate has a property interest in the proceeds available under the Company's directors and officers' liability insurance policies and that allowing the Shareholders' Litigation to proceed will necessarily reduce the amounts available to the Estate under the policies. Second, they contend if the Shareholders are successful either in obtaining a judgment against the defendants or in reaching a settlement with them, they may deplete the defendants' assets and reduce any potential recovery for the Estate. Third, they contend if the Shareholders are allowed to proceed, and the merits of their claims are resolved, there is a risk that the Estate would be bound by factual findings that may be adverse to the Estate and that any amount the Estate maybe be entitled to recover would be reduced by a setoff for amounts the defendants paid to the Shareholders. The Debtors have argued in the alternative that the court can look to its authority under section 105(a)[3] and find that for each of these reasons the Shareholders' Litigation should be enjoined so that it will not undermine the success of the reorganization plan.

a. *Is the Shareholders' Litigation Subject to the Automatic Stay Because It Will Result in Claims under the Directors and Officers' Liability Policies?*

■ The Debtors have argued that allowing the Shareholders' Litigation to go forward will harm the Company. They argue it will diminish funds available under the directors and officers' liability insurance policies, both because the funds available through the policies will be diminished as they are paid out to reimburse officers and directors for the costs they incur in defending the Shareholders' Litigation, and because there is a risk that if the Shareholders are successful they will grab the amounts available under the

---

**3.** 11 U.S.C. § 105(a) provides:

    (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

policies. Further, they argue that to the extent coverage is not available, it will increase the amount of the claims for indemnification the officers and directors have against the Company. The Debtors note that there is a pending adversary proceeding against the insurance companies which seeks to determine whether the policies are the property of the Estate.

Judge Walsh agreed with this argument, finding that the policies are the property of the Estate and that the Shareholders' Litigation appears likely to impinge on the proceeds, through the payment of a judgment or ongoing defense costs. One of the insurers, St. Paul Mercury Insurance Company, has submitted an amicus memorandum in support of the Shareholders' appeal. In that brief, St. Paul Mercury argues, among other things, that whether its policy is the property of the estate is a matter at issue in the adversary proceeding pending between the Estate and St. Paul, and that in that case, St. Paul expects to establish its policy cannot be property of the Estate as a provision in the policy unambiguously bars coverage for claims made by the insureds.

Actually, if we put aside for the moment the question of whether the policies are property of the Estate, we can separate the issues of allowing the Shareholders' Litigation to go forward and the impact, if any, litigation may have on amounts available under the policies. The Shareholders have not asserted a claim against the insurers. Therefore, they will not obtain a judgment against the insurers in the Shareholders' Litigation and the issue of coverage is not relevant to the matters at issue in that action.

If the Shareholders are successful and obtain a judgment or judgments, coverage may be relevant as a practical matter, as certain of the defendants may not have the ability to pay any judgment. The defendants may have claims against the Company and the insurers for indemnification. It is at that time and in that context, an action among the Debtors, the officers and directors and the insurers, that this issue of the nature and extent of coverage would be resolved.

The nature and amount of coverage may be relevant to other issues related to the Shareholders' Litigation, including payment of defense costs and possible settlements. But those are matters that can be resolved between the insurers and insured, without enjoining the Shareholders from proceeding with their claims.

The Debtors are probably correct that allowing the Shareholders' Litigation to proceed will increase the magnitude of directors and officers' indemnification claims against the Estate. However, that does not appear to be a basis for permanently enjoining the Shareholders' Litigation.

The Bankruptcy Court erred in finding that allowing the Shareholders' Litigation to proceed will impermissibly diminish or drain the pool of insurance proceeds. Consequently, it erred in finding the Debtors had a probability of success on this claim for relief.

b. *Is the Shareholders' Litigation Subject to the Automatic Stay Because It May Impact the Debtors' Right to Recover Damages from the Defendants?*

The Debtors have argued that the Shareholders' Litigation is subject to the automatic stay and should be enjoined as the Shareholders' claims for money damages will have a direct effect on the Estate's property.

First, the Debtors suggest that if the Shareholders are successful and recover sums from the defendants, there is a risk that if any officer and director defendant were subsequently held liable to the Debtors, he or she would have a right to a setoff for any amounts paid to the Shareholders. Unfortunately, the Debtors have failed to assist the court in assessing this risk, as they have failed to cite any cases that discuss setoff.

Concepts relating to setoff can be traced to the equitable doctrine requiring that the demands of mutually indebted parties be setoff against each other and that only the balance be recovered in a judicial proceeding by one party against the other. Most jurisdictions have now adopted statutes or rules that provide for setoff and recognize it as a counterclaim where a debt the plaintiff owes the defendant is setoff against amounts the defendant owes the plaintiff. *See generally,* 20 *Am.Jur.2d* Counterclaim, Recoupment, and Setoff § 6 (1995).

It does not appear that principles relating to setoff are applicable to the matters at issue in the Shareholders' Litigation or to the Debtors' claims in this matter. To the extent the Debtors' complaint seeks a declaration that the Shareholders' Litigation is subject to the automatic stay because it creates a risk that the Debtors' recovery will be reduced by a setoff based on a judgment the Shareholders may obtain, the complaint fails to state a claim and the Bankruptcy Court should have granted the Shareholders' motion to dismiss.

Second, the Debtors argue that if the Shareholders are allowed to proceed, and the merits of their claims are resolved, there is a risk the Estate will be bound by factual findings that may be adverse to the Estate. The Bankruptcy Court adopted this analysis, finding that if the Shareholders lose their case, it could severely prejudice the Estate's claims, potentially binding the Estate with adverse findings from the Shareholders' Litigation.

The traditional rule on issue preclusion is set out at Section 27 of the *Restatement of the Law Second,* Judgments 2d. It reads:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Under this statement of the rule, it does not appear that the Estate would be at risk of being bound by findings of fact in the Shareholders' Litigation, as it is not a party to the action. The Debtors have not cited any case or law to the contrary. The court expects there is none.

Third, the Debtors suggest that if the Shareholders are successful and recover sums from the defendants, the Estate could lose the ability to recover its damages, as the individual directors do not have deep enough pockets to satisfy all claims against them. The parties have identified a number of cases that speak to this general subject of when a bankruptcy court may enjoin litigation against a party to preserve an Estate's opportunity to recovery damages from that party.

In *In re MortgageAmerica,* 714 F.2d 1266 (5th Cir.1983), American National Bank of Austin had obtained a judgment for $192,554.40 against MortgageAmerica in April 1981. In July, American Nation brought an action to collect this amount from Joe R. Long, who had controlled MortgageAmerica as its sole shareholder. The Bank alleged Long had stripped the company of its assets to benefit himself, and defrauded the company's creditors.

MortgageAmerica was forced into involuntary bankruptcy in August and filed an action to enjoin the Bank from proceeding, arguing that the Bank's claims were the property of the estate and the Bank's case was, therefore, subject to the automatic stay in 11 U.S.C. § 362.

In affirming the bankruptcy and district court orders imposing a stay, the United States Court of Appeals for the Fifth Circuit found that each of the Bank's three causes of action, based on the corporate trust fund doctrine and the denuding the corporation theory, and for a fraudulent conveyance, belonged to the corporation. In the opinion, the court quotes Justice Brandeis's opinion in *Pierce v. United States,* 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697 (1921):

The law which sends a corporation into the world with the capacity to act imposes upon its assets liability for its acts. The corporation cannot disable itself from responding by distributing its property among its stockholders, and leaving remediless those having valid claims. In such a case the claims, after being reduced to judgments, may be satisfied out of the assets in the hands of the stockholders.

*Pierce v. United States*, 255 U.S. at 402, 41 S.Ct. 365.

With regard to the principles supporting the section 362 stay, the court quoted the House Report to the 1978 Bankruptcy Code, noting:

[O]ne of "the prime bankruptcy polic[ies]" that pervades virtually every provision of the Code is that of "equality of distribution among creditors," and, conversely, one of the principal bankruptcy betes noires is the "race of diligence" of creditors to dismember the debtor before its assets are exhausted.... The automatic stay thus prevents a multijurisdictional rush to judgment whose organizing principle could only be first-come-first served and protects the interests of all creditors by treating like-situated claimants equally.

*In re MortgageAmerica*, 714 F.2d at 1275.

The opinion in *MortgageAmerica* stands for the proposition that, where a cause of action belongs to a corporation and is being asserted in a case brought by a creditor of the corporation, on the filing of a bankruptcy petition, the action is the property of the estate and the case is automatically stayed pursuant to section 362(a)(3).

In this case, as noted above, the cause of action being asserted by the Shareholders is personal and does not belong to the corporation. The decision in *MortgageAmerica* does not therefore support the Estate's position that the Shareholders' claims should be enjoined.

In *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988), Bankers Trust

had loaned money to Braten Apparel Corporation, which was owned by Daniel Rhoades, Herman Soifer and Milton Braten. In its complaint, Bankers Trust alleged Rhoades, Soifer and Braten had, among other things, fraudulently sought to transfer and conceal assets in a bankruptcy proceeding. Defendants moved to dismiss, arguing Bankers Trust lacked standing to bring a racketeering claim as it suffered no injury different than the injury suffered by the corporation that was being pursued by the trustee in bankruptcy. The Court of Appeals for the Second Circuit rejected this argument, finding that Bankers Trust had standing to pursue its RICO claim even though it might have suffered an identical injury as the corporation. The court went on to note that to the extent the corporation through its trustee in bankruptcy is able to recover for its injury, Bankers Trust's injury will be correspondingly reduced. The court found that, as it would be impossible to determine Bankers Trust's damages until the trustee's action was resolved, Bankers Trust's claim for damages was too speculative, its claim had not accrued, and its action should be dismissed without prejudice.

The opinion in *Bankers Trust* stands for the proposition that while a creditor may have a separate cause of action against a corporation's principals for injury suffered as a result of their fraudulently concealing assets in a bankruptcy proceeding, the creditor's damages may be speculative and its cause of action may not accrue until after the claims are dealt with by the bankruptcy court.

In this case, the Shareholders are not bringing this action as creditors and their damages, if any, will not be reduced by amounts they would receive for claims filed in the bankruptcy case. The decision in *Bankers Trust*, does not, therefore, support the Estate's position that the Shareholders' claims should be enjoined.

In *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir.1998), investors who had pur-

chased commodities futures from Lake States Corporation, brought securities fraud claims against the company, its founder, certain brokers and a futures commission merchant. The company and its founder were forced into bankruptcy. A trustee then moved to stay these actions arguing that they were the property of the estate and subject to the section 362 automatic stay and that the claims were sufficiently "related to" those of the trustee to support a section 105 injunction.

The bankruptcy court granted the trustee's motion and stayed the case. The district court reversed, finding that the plaintiffs' claims were not the property of the estate. On appeal, the United States Court of Appeals for the Seventh Circuit first looked to the kinds of claims that a trustee · may bring. It noted that the trustee has the sole responsibility to represent the estate, by bringing actions on its behalf to marshal assets for the benefit of the estate's creditors. Second, the court noted that while the trustee is also the only party who can sue to represent the interests of the creditors as a class, he has no standing to bring personal claims of creditors.

The court found that the plaintiffs as creditors stand in exactly the same position as the rest of the aggrieved investors, pursuing identical resources for redress of identical, if individual harms. Relying on the Second Circuit's decision in *Bankers Trust*, the court found the litigation should be enjoined pursuant to section 105 as sufficiently related to the trustee's work on behalf of the estate. The court found that once the bankruptcy proceeding was resolved and the plaintiffs compensated for their injuries through their share of the assets in the debtor's estates, they could then proceed with their action for whatever individualized damages may be proper.

The opinion in *Fisher* stands for the proposition that, while a creditor may have a separate cause of action against a corporation's agents for injury suffered as a result of their fraud, where the trustee

brings a similar action for all creditors and that action is based on the same transaction and seeks to recover the same damages, the creditor's case is sufficiently related to the trustee's work that it should be stayed under section 105 while the bankruptcy action proceeds.

In this case, the Shareholders are not bringing litigation as creditors and their damages, if any, will not be reduced by amounts they would receive for claims filed in the bankruptcy case. The decision in *Fisher* does not, therefore, support the Estate's position that the Shareholders' claims should be enjoined.

In *In re Phar–Mor Securities Litigation*, 164 B.R. 903 (W.D.Pa.1994), the Official Unsecured Creditors Committee filed an adversary proceeding in the bankruptcy court against certain of the debtor's shareholders seeking to enjoin them from proceeding with a securities action against the company's former auditors, Coopers & Lybrand. The debtor had filed a separate action against the auditors asserting negligence and breach of contract claims.

The Committee argued the shareholders' claims were property of the estate and subject to a section 362 automatic stay. In rejecting this argument, the court found the shareholders' claims are personal and are not derivative of the debtor's claims against the auditors.

In the alternative, the Committee argued that the shareholders action should be stayed pursuant to section 105(a), as their action will affect or diminish the debtor's claims in that they will interfere with the debtor's ability to prosecute its claims and may dilute the debtor's recovery. The court also rejected this argument, finding it was aware of no authority which would elevate the claims and rights to redress of the debtor over the separate and distinct claims of the shareholders. In addition, the court found the Committee had failed to show Coopers would not be able to satisfy any judgments against it.

The opinion in *Phar–Mor* stands for the proposition that the securities claims of a debtor's shareholders against non-bankrupt entities are not property of the estate and that a debtor's lawsuit against those entities will not normally be granted a priority over the a shareholder's lawsuit asserting those claims.

In this case, the Shareholders' securities claims are similar to the claims asserted by the shareholders in *Phar–Mor*, in that they are personal claims for damages. They are not claims to recover assets of the estate, as were the claims in *MortgageAmerica*. Nor are they claims of creditors that should be pursued by the trustee, as were the claims in *Bankers Trust* and *Fisher*.

The court agrees with the analysis and decision in *Phar–Mor* and finds that the Shareholders' securities claims are personal and not subject to the automatic stay in section 326. As the Debtors have failed to identify any cases or law to the contrary, the Bankruptcy Court should have granted the Shareholders' motion to dismiss the Estate's First Cause of Action to the extent is sought a declaration that these claims are subject to the automatic stay in section 362.

■ As noted above, the Debtors have argued in the alternative that the court can grant this relief and stay the Shareholders' Litigation under section 105, as staying the litigation will prevent the Shareholders from undermining the negotiated distribution priorities in the Reorganization Plan.

The Creditors' Committee made this argument in *Phar–Mor*. In that case, the Committee argued that there was a risk the lawsuits would cost Coopers so much that they would dissipate any potential recovery for the debtor, which would, in turn, threaten the integrity of the reorganization process. The judge rejected that argument in *Phar–Mor*, finding that the Committee had failed to show Coopers would be unable to satisfy any judgment.

In addition the court declined to subrogate the rights of the shareholders to the rights of the debtor, finding: "[T]he Debtor has no greater rights to assert its claims against Coopers than the Equity Plaintiffs precisely because the Equity Plaintiffs are not attempting to assert claims belonging to the Debtor."

In this case, one factor the Bankruptcy Court looked to in finding the Debtors would be irreparably harmed if the Shareholders were not enjoined, is that the individual directors do not have deep enough pockets to satisfy all claims against them. This is one aspect of the problem presented by what otherwise might be a race between the Shareholders and the Debtors to recover their damages from the defendants. Of course it does not address the issue of why the Shareholders should be enjoined from proceeding against the other defendants, including Peat Marwick, Chicago Corp., and Sandler O'Neill & Partners.

Certainly from the Debtors' perspective, this issue of the directors' limited resources raises a risk of harm, in that if the Shareholders are allowed to proceed they may recover as their damages, money that might otherwise go to the Estate. This is the type of harm to which a court of equity would normally be sensitive. The difficulty the Debtors have had is in identifying a right to the relief; that is, they have been unable to identify a legal principle that stands for the proposition that the Estate's claims for relief should take precedence over the Shareholders' claims. Absent a right to relief, they have no right to an injunction. And without the probability of success on the merits of their claims for relief, they have no right to a preliminary injunction.

The Debtors have taken a two-part approach in trying to find that right. First, they sought to create it by incorporating the Shareholders' claims in the Reorganization Plan. But announcing you will represent someone, does not give you the right to do it. So long as the Shareholders

wish to pursue litigation, they cannot be precluded from doing so by the fact that the Debtors want to incorporate the Shareholders' claims in their Plan of Reorganization.

Second, the Debtors sought to set out a basis for relief in their complaint in this adversary proceeding. They seek a declaration that the Shareholders' claims are derivative, when they are not. They seek a declaration that the Shareholders' claims are subordinate, when they appear not to be. They seek a declaration that the Shareholders' Litigation will undermine the Plan. While that declaration may nor may not be correct, it fails to state a claim for relief. The Debtors have failed to show they have a right to prevent the Shareholders from proceeding with their litigation even if it may undermine the Plan.

III.  *CONCLUSION*

As the Debtors have failed to establish a probability of success on the merits of their claims for relief against the Shareholders, the Bankruptcy Court erred in granting the Debtors' motion and in enjoining the Shareholders from proceeding. For these reasons, the court will enter an order reversing the Bankruptcy Court's October 5, 1999 Order and remanding this matter for further proceedings consistent with this opinion.